Cetin A. OKCUOGLU, et al.

v.

HESS, GRANT & CO., INC., et al.

Civ. A. No. 83–3017.

United States District Court,
E.D. Pennsylvania.

Feb. 23, 1984.

George E. Pierce, Jr., Philadelphia, Pa., for Cetin Okcuoglu and Geotech, Inc.

Daniel B. Pierson, and Samuel Lander, Pierson, Cameron & Morris, Philadelphia, Pa., for Hess, Grant & Co., Inc.

C. Clark Hodgson, Jr., Philadelphia, Pa., for Merrill Lynch, Pierce, Fenner & Smith.

MEMORANDUM

GILES, District Judge.

Plaintiffs are options transactions customers of Hess, Grant & Company ("Hess Grant"), a stock brokerage firm. Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch"), also a stock brokerage firm, has a clearing agent agreement with Hess Grant pursuant to which it performs centralized cashiering, bookkeeping and execution functions for margin accounts serviced by Hess Grant for the plaintiffs. Cetin A. Okcuoglu ("Okcuoglu") is an individual who is the sole stockholder and officer of Geotech, Inc. ("Geotech"). At all times, Mr. Okcuoglu, dealt with Hess Grant for himself and Geotech. Transactions were intermingled between their accounts. Knowledge of this fact and consent are imputed to both plaintiffs. Mr. Okcuoglu at all times acted as agent for Geotech and

for all purposes hereafter discussed plaintiffs shall be considered a single investor.

Plaintiffs' complaint consists of ten counts. Counts I through VI are against Hess Grant, only, for alleged breach of agreement, warranty, express and implied, and fiduciary duty relating to options transactions occurring in March, 1982 when Pershing & Co., Inc. was predecessor clearing agent for Hess Grant.

Counts VII through X set forth claims against both Hess Grant and Merrill Lynch. They pertain to a series of options purchases made between September 20 and October 6, 1982 by Hess Grant for plaintiffs. Some of these purchases resulted in Regulation T calls against plaintiffs' margin accounts. Hess Grant determined after consultation with Merrill Lynch that it was necessary to liquidate promptly 4,000 shares of Telex stock held in plaintiffs' account to meet that margin call. Plaintiffs complain that defendants followed through with the liquidation decision despite Mr. Okcuoglu's protests and that they had given him insufficient time and opportunity to meet the call with other resources.

Jurisdiction is based upon diversity of citizenship and the amount in controversy, exclusive of interests and costs, exceeds $10,000. The complaint does not allege any claims arising under the securities laws or other statutes conferring exclusive jurisdiction upon the federal courts.

Plaintiffs seek a jury trial to resolve their state law claims against defendants. Defendants have filed separate motions to stay proceedings in this court pending arbitration of plaintiffs' claims. They contend that arbitration is mandated by several agreements to which Mr. Okcuoglu, and inferentially, Geotech are parties. As to Counts VII through X, defendants claim that plaintiffs are bound to arbitrate pursuant to an options agreement, a Merrill Lynch form, dated October 28, 1982. As to Counts I through VI, Hess Grant contends that arbitration is compelled by a customer agreement and an options agreement with the immediate predecessor clearing agent,

Pershing & Company, Inc. Hess Grant claims that it was understood, despite the absence of clear language in the documents in question to that effect, that it was an agent of Pershing & Co. and Merrill Lynch for purposes of all options transactions. Specifically, defendants seek to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 2–4.

■ The parties agree that where there is a motion to arbitrate the court must decide if a party has agreed to arbitrate. *Vespe Contracting Co. v. Anvan Corp.*, 399 F.Supp. 516, 519 (E.D.Pa.1975). Whether a matter is subject to arbitration "depends upon the intent of the parties as it appears from the language used, its context within the instrument, and the circumstances surrounding its formation and execution." *Bruno v. Pepperidge Farm, Inc.*, 256 F.Supp. 865, 868 (E.D.Pa.1966). Essentially, the court must determine whether there was a clear meeting of the minds on the issue.

Whether a party has agreed to arbitration is determined on the basis of ordinary contract principles. A valid arbitration provision must be in writing, but a party may be bound by that provision without having signed an exemplar. *Fox v. Merrill Lynch & Co., Inc.*, 453 F.Supp. 561, 564 (S.D.N.Y.1978). *See also First Citizens Municipal Corp. v. Pershing Division of Donaldson, Lufkin & Jenrette Securities Corp.*, 546 F.Supp. 884 (N.D.Ga.1982).

■ The lynchpin of the analysis, however, is whether the facts and circumstances surrounding the formation and execution of the document demonstrate that there was mutual assent to arbitration. A party who has not agreed cannot be forced to arbitrate a dispute, even though the law favors arbitration as a nonjudicial means for prompt resolution of differences. *First Citizens Municipal Corp.*, 546 F.Supp. at 887. Once it is determined that such an agreement was reached, "any 'doubts as to whether an arbitration clause may be interpreted to cover the asserted dispute should

be resolved in favor of arbitration unless a court can state with "positive assurance" that this dispute was not meant to be arbitrated.'" *Becker Autoradio v. Becker Autoradiowerk Gmbh,* 585 F.2d 39, 44 (3d Cir.1978).

■ On or about January 24, 1977, Mr. Okcuoglu signed a Standard Pershing Customer Agreement wherein he recognized Pershing as broker for the sale and purchase of securities. Hess Grant was the introducing broker in the relationship. Pershing had, by agreement with Hess Grant, only clearing agent functions. The Customer Agreement contained an arbitration clause. Although it was not signed by Pershing's representatives, unquestionably, by their conduct all parties adopted the terms thereof governing the relationships. For over five (5) years, each operated under it in complete mutual reliance and with confidence that the terms were fully enforceable. On November 15, 1979, plaintiff was approved by Hess Grant and Pershing for an options transaction account. An option agreement was executed by Mr. Okcuoglu as governing the options account and trading. Paragraph 1 specified that Pershing and its correspondent firms and agents were to be held harmless for any loss occasioned by trading in that highly speculative market. Paragraph 8, by general reference to any and all prior agreements, incorporated the terms of the Pershing Customer Agreement which contained the arbitration provision.

Hess Grant maintains that as introducing broker in the relationship it was a correspondent firm and acted as agent for Pershing in approving plaintiffs for options trading. Plaintiffs contend that Hess Grant was not specifically named in either document and that its representatives did not execute the agreement on behalf of Pershing. Therefore, plaintiffs argue, Hess Grant cannot benefit from the arbitration provision. Plaintiffs also allege that, by the express language of the arbitration clause in the Customer Agreement, *i.e.,* "any controversy arising between us," any arbitration was agreed to be limited to disputes between Pershing and them, to the exclusion of plaintiffs' claims against Hess Grant. Finally, plaintiffs assert that the claims against Hess Grant do not involve Pershing.

Plaintiffs allege the following transactions, or lack thereof, in their margin accounts starting in March of 1982 which were to be effected by Hess Grant and cleared through Pershing:

1. On March 9, 1982, Hess Grant failed to execute a sale of 100 NWI June 65 put options at a price of $10.00 or more pursuant to the clients instructions. (Counts I and II).

2. On March 15, 1982, Hess Grant sold without authorization 50 Federal Express April 20 call options at $1^{11}/_{16}$. (Counts I and IV).

3. On August 3, 1982, Hess Grant sold without authorization 50 National Semiconductor August 20 put options at $2^{3}/_{8}$. (Counts V and VI).

■ After review of the evidence presented, the court concludes and agrees with Hess Grant that, under the Pershing option agreement, it was Pershing's corresponding firm and agent for all plaintiffs' options transactions. As introducing broker, Hess Grant was agent both to plaintiff and Pershing. Although plaintiffs have not sued Pershing, the transactions in question flowed or were to flow through that firm. The above enumerated options transactions cannot be said to exclude Pershings' clearing or execution activity in plaintiffs' accounts. It is yet possible that Pershing might be brought into the subsisting disputes as a necessary party. So long as that possibility exists, Pershing has the right to have any and all disputes as to options transactions it handled submitted to arbitration, including those between introducing broker and customer occurring during the period of its clearing agency agreement. In addition, by approving plaintiffs for options trading through Pershing, Hess Grant acted as a disclosed agent for Pershing. It follows that the arbitration provision in the Pershing Cus-

tomer Agreement was applicable to options transactions disputes arising between plaintiffs and Hess Grant as Pershing's agent. Mr. Okcuoglu had a clear understanding that any dispute involving Pershing, directly or indirectly, would be subject to arbitration. Accordingly, as to Counts I through VI, defendants' motion to stay proceedings pending arbitration is granted.

In Counts VII–X, plaintiffs claim that the actions of both Merrill Lynch and Hess Grant, in the sale of 4,000 shares of Telex shares to meet a Regulation T margin call, in addition to constituting a breach of express or implied warranty and intentional, reckless or negligent conduct, also constitute conversion of the shares or, alternatively, a conversion of the excess number of shares sold over those required by Regulation T to be sold.

Effective August 16, 1982, Hess Grant cancelled its clearing agency agreement with Pershing and entered into an agreement with Merrill Lynch to perform the same functions. The options transactions in progress continued without interruption and subsequent transactions were effectuated by plaintiffs through Hess Grant and cleared through Merrill Lynch. A notice dated August 2, 1982 was sent by Hess Grant to all clients, including plaintiffs, advising of the change. That notice made no mention of arbitration. The evidence is unclear whether a standard Merrill Lynch options transactions agreement form was actually sent along with the notice. Hess Grant maintains that one would have been sent in the ordinary course of business. Mr. Okcuoglu disclaims receipt and review of it. In any event, the business between the parties continued apace and without dispute until October 21, 1982, although plaintiffs and Hess Grant had to have known that no formal agreement had been executed to substitute for the Pershing options transactions agreement.

On October 21, 1982, as Mr. Okcuoglu was preparing to leave on a trip, Henry D. Felton of Hess Grant called to inform him of the urgent need to cover a Regulation T margin call and the necessity of utilizing the Telex stock. Mr. Okcuoglu had no available alternative at the time but instructed Mr. Felton not to liquidate the stock. Mr. Felton did not follow this direction because allegedly there was no choice but to cover the margin call. When Mr. Okcuoglu returned on October 24, he had a telephone conversation with Mr. Felton wherein he was told of the stock liquidation. Mr. Okcuoglu threatened legal action. On October 28, Mr. Felton called Mr. Okcuoglu to advise him that in order to continue his account with Merrill Lynch it was necessary to fill out a form to be forwarded to Merrill Lynch. Mr. Okcuoglu authorized Mr. Felton to complete or sign it. Mr. Felton did not read or explain to Mr. Okcuoglu any of the language or terms of that form, which was a standard options transactions agreement form. Nor did Mr. Okcuoglu ask that Mr. Felton read the unspecified form or any of its contents. No mention was made to Mr. Okcuoglu that the form would apply to their existing dispute. There was, however, a clear meeting of the minds that Mr. Felton was to execute the form to continue plaintiffs' accounts. The trading continued. Dated October 28, the standard option agreement contains an arbitration provision which specifies the available tribunals and the method of, and timetable for, selection of the arbitration forum.

■ The court finds Mr. Okcuoglu adopted the Merrill Lynch standard option agreement when he gave Mr. Felton, his agent, authority to bind him by completing or signing such form as would insure that there would be no interruption in the options trading accounts. It is of no consequence that plaintiffs may not have known the specific terms. In causing the options accounts to continue through Merrill Lynch, plaintiffs bound themselves to resolve any controversy arising out of options transactions through the arbitration mechanism set forth in the form.

■ Plaintiffs argue that if there was an agreement to arbitrate, it covers only their controversies with Merrill Lynch since the Merrill Lynch form does not specifically

include Hess Grant in the arbitration provision. This argument must be rejected. By plaintiffs' statement of claim, the controversy with Hess Grant is inextricably tied to Merrill Lynch's requirements as clearing agent. Therefore, the claim represents a controversy between plaintiffs and Merrill Lynch which must be arbitrated. By the same reasoning, Hess Grant, as plaintiffs' agent, is bound to arbitrate on their behalf any disputes with Merrill Lynch arising from the handling of their account. Plaintiffs knew, understood and accepted that Hess Grant was also agent for Merrill Lynch because Hess Grant determined plaintiffs' ability to meet margin calls and to otherwise comply with Merrill Lynch's policies and federal regulations governing options transactions. Since this controversy involves Hess Grant's alleged attempt to enforce either Merrill Lynch's or federal regulations or to hold plaintiffs to their promises, direct or implied, to abide by the same, Hess Grant stands in the shoes of Merrill Lynch and the dispute is arbitrable.

Plaintiffs must concede that there was an agreement, through oral, upon which the option trading through Merrill Lynch was initiated and continued. They argue, however, that there never was an agreed upon method of dispute resolution and, in absence of an agreement, they are free to pursue common law or statutory remedies. Assuming there was an enforceable written agreement as of October 28, 1982, plaintiffs argue there was no clear meeting of the minds that it was to have had retrospective application to prior options transactions, specifically the October 21 dispute. The response to this argument, however, is that plaintiffs consented, through their agent, to be bound by such document as Merrill Lynch required to continue the trading on their behalf. The Merrill Lynch form specifically required that any controversy arising in connection with an options transaction executed on plaintiffs' behalf be subject to arbitration. There has been no showing that Merrill Lynch required anything less or that plaintiffs would not have executed the same form to insure uninterrupted brokerage service. Plain-

tiffs received that for which they bargained—the continued trading in their account and are bound by the arbitration provision.

For the above reasons, the proceedings as to all counts shall be stayed pending arbitration of plaintiffs' state law claims in accordance with the Pershing Customer Agreement (Counts I through VI) and the Merrill Lynch Standard Options Agreement (Counts VII through X).