John E. SHAFFER, Plaintiff,

v.

STRATTON OAKMONT, INC., and Robert Koch, Defendants.

No. 90 C 5906.

United States District Court, N.D. Illinois, E.D.

Jan. 28, 1991.

Peter C. John, Steven Joseph Roeder, Pope & John, Ltd., Chicago, Ill., for plaintiff.

Mark T. Carberry, Neal, Gerber & Eisenberg, Chicago, Ill., for defendants.

## ORDER

NORGLE, District Judge.

Before the court is the motion of defendants Stratton Oakmont, Inc. and Robert Koch for a stay pending arbitration and for a protective order staying discovery.[1] For the reasons discussed below, this motion is denied.

## FACTS

In February of 1990, plaintiff John E. Shaffer ("Shaffer") opened an account with Stratton Oakmont, Inc. ("Stratton"), a securities broker and dealer, through Robert Koch ("Koch"), an employee of Shaffer. Unlike those securities brokers known in the industry as "self-clearing" brokers, Stratton is an "introducing" broker (also known as a "corresponding" broker), and does not perform its own "clearing" services. Stratton must contract with a "clearing broker" in order to consummate the securities transactions which it recommends to its customers.[2] Pursuant to opening his account with Stratton, Shaffer signed a brokerage account agreement (the "Brokerage Agreement") provided by Ameritrade, Inc., Stratton's clearing broker.

The Brokerage Agreement consists of several pages of pre-printed forms. *See* Exhibit A to Motion of Defendants Stratton Oakmont, Inc. and Robert W. Koch For a Stay Pending Arbitration and For a Protective Order Staying Discovery ("Defendants' Motion for Stay"). The top of the first page of the Brokerage Agreement contains Ameritrade's name in large letters and bold print and provides a space for

identification of the introducing broker. This space, however, is left blank on the form. On the bottom of the page, immediately above the signature line on which Shaffer's signature appears, is printed: "This brokerage account agreement contains a pre-dispute arbitration clause in form AM–9–89, section 1, paragraph 7." The arbitration clause referred to in this notice appears subsequently in the agreement, and reads, in relevant part:

> Any controversy between *Ameritrade, Inc. and me* arising out of or relating to this Agreement or the breach thereof may be settled by arbitration.... If I do not make such election by registered mail addressed to Ameritrade, Inc. at its main office within five days after the mailing by Ameritrade, Inc. of a notice requesting such election, I authorize Ameritrade, Inc. to make such election in behalf of myself. [Emphasis added.]

Exhibit A to Defendants' Motion for Stay, (unnumbered) p. 4. Neither defendant's name appears anywhere in the agreement.

After the parties transacted two securities purchases in February and April of 1990, a dispute between them arose regarding a June 1990 stock transaction. Plaintiff contends that on June 27, 1990, without his express consent, defendants purchased 30,000 shares of Ventura Motion Picture Group Stock on his account, at $8 per share. Defendants contend that plaintiff had agreed to purchase the stock but failed to make a timely margin deposit payment in order to secure the acquisition. Defendants then sold the stock at $7 per share, resulting in a loss of $30,000 on the deal. In order to cover the loss, defendants liquidated the remaining stocks in plaintiff's

---

1. This motion was previously granted in an order issued by this court on December 14, 1990. In that order, the court also dismissed the case in favor of arbitration. The court subsequently granted the plaintiff's motion to reconsider the December 14 order in light of the apparent split of authority on the issue of whether defendants, as "introducing" brokers had standing to enforce the arbitration clause contained in a brokerage agreement signed only by plaintiff and a third party "clearing broker." In this opinion, the court overrules its December 14, 1990 order.

2. The "clearing" brokers have access to the floors of the relevant securities exchanges and actually trade the securities as they receive purchase and sale orders from their customers. Clearing services include the preparation of trade confirmations and monthly statements and transmittal of these documents to customers, the retention of customer's securities and cash, and the extension of margin credit to customers who wish to trade securities through a margin account.

account and returned to plaintiff the remaining balance.

On October 10, 1990, plaintiff filed this action, alleging claims for federal securities fraud, as well as pendant state claims for breach of fiduciary duty and violations of the Illinois Consumer Fraud and Deceptive Practices Act. On December 13, 1990, defendants filed this motion for a stay pending arbitration and for a protective order staying discovery.

### DISCUSSION

The parties agree that the sole question at issue here is whether defendants Stratton and Koch have standing to compel plaintiff to arbitrate his grievances with them pursuant to the arbitration provision in the Ameritrade Brokerage Agreement. In the memorandum in support of its motion for stay, defendants acknowledge that there is some division of authority on this question. They argue that the better rule resolves all doubts in favor of arbitration. Defendants further argue that they should be permitted to invoke the arbitration provision under either an agency theory or a third party beneficiary theory. Plaintiff, on the other hand, argues that the defendants are not parties to the Brokerage Agreement and have no standing to benefit from its arbitration provision. He cites to a number of cases in which courts have refused to apply the third party beneficiary doctrine or the principles of agency to permit an introducing broker to benefit from an arbitration agreement signed only by the clearing broker and the investor. As a policy issue, plaintiff also argues that it would be unfair for the court to compel him to arbitrate his dispute with defendants when he never consented to relinquish his right to be heard in federal court.

■ It is well established that the: federal policy in favor of arbitration does not give courts license to compel arbitration where there has been no agreement to arbitrate. Thus, "the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrys-*

*ler–Plymouth, Inc.,* 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985).

*Scher v. Bear Stearns & Co.,* 723 F.Supp. 211, 214 (S.D.N.Y.1989). In determining whether such an agreement exists, the principles of contract law apply, and the court must determine whether there was a meeting of minds or mutual assent between the parties. *See, e.g., Okcuoglu v. Hess, Grant & Co., Inc.,* 580 F.Supp. 749, 750 (E.D.Pa.1984). Thus, no agreement exists where the investor has not agreed to submit to arbitration his disputes with the introducing broker. On this point, there is no division of authority. In *Okcuoglu,* one of the cases cited in support of defendants' position, the court stated that: "A party who has not agreed cannot be forced to arbitrate a dispute, even though the law favors arbitration as a nonjudicial means for prompt resolution of differences." 580 F.Supp. at 750.

■ Although all relevant authorities will not compel arbitration absent evidence of the parties' agreement to arbitrate, they appear somewhat divided on whether to imply such an agreement in the absence of an express contract or understanding. Most courts addressing this issue have held that a securities investor will not be deemed to have agreed to arbitration (and thus, to have waived its right to federal jurisdiction) absent evidence of its actual intent to be so bound. *Mowbray v. Moseley, Hallgarten, Estabrook & Weeden, Inc.,* 795 F.2d 1111 (1st Cir.1986); *Conway v. Icahn & Co,* No. 89 C 3995 (S.D.N.Y. June 14, 1990); *Wilson v. S.H. Blair & Co.,* 731 F.Supp. 1359 (N.D.Ind.1990); *Lester v. Basner,* 676 F.Supp. 481 (S.D.N.Y.1987); *Finlay v. Moseley, Hallgarten, Estabrook & Weeden,* No. 85 C 7205, 1987 WL 5237 (N.D.Ill. January 5, 1987); *Ahn v. Rooney, Pace Inc.,* 624 F.Supp. 368 (S.D.N.Y.1985). Other courts, however, appear to hold that consent may be implied in law, either because the introducing broker is deemed to be the disclosed agent of the clearing broker, *see Okcuoglu,* or because the introducing broker is viewed as a third party beneficiary to the written agreement between

the investor and the clearing broker. *See Cauble v. Mabon, Nugent & Co.*, 594 F.Supp. 985 (S.D.N.Y.1984).

Although these cases initially appear to be irreconcilable, they may also be viewed as merely factually distinguishable. Each of the four cases cited in support of defendants' position, *Okcuoglu, Cauble, Scher*, and *Nesslage v. York Securities, Inc.*, 823 F.2d 231, 233 (8th Cir.1987), either are factually distinguishable from the cases which support plaintiff's position, or are inapplicable to the narrow issue presented here.

For example, in *Nesslage*, which held that the introductory broker could enforce the arbitration clause contained in the clearing broker's account agreement with the plaintiff, the Eight Circuit arguably relied on a factual finding by the trial court that all parties concerned intended the margin agreement between the plaintiff and the clearing broker to apply to the introducing broker as well. The court stated that:

> the district court found that the Nesslages [investors], York Securities [introducing brokerage firm] and Samson [employee of York Securities] *intended* that the margin agreement, including the arbitration provision, would govern their brokerage relationship, even though York Securities and Samson were not parties to the margin agreement, and that York Securities and Samson could enforce the margin agreement. [Emphasis added.]

*Nesslage*, 823 F.2d at 233.[3]

Similarly, in *Okcuoglu*, the district court held that the conduct of the parties expressed their intention for a nonsignatory to the securities agreement to benefit from the arbitration clause contained therein. "Although it [the agreement] was not signed by Pershing's representatives, unquestionably, by their conduct all parties adopted the terms thereof governing the relationships. For over five (5) years, each operated under it in complete mutual reliance...." *Okcuoglu*, 580 F.Supp. at 751.

In the *Scher* opinion, the district court held that a nonsignatory to a customer account agreement was entitled to benefit from the arbitration clause contained therein under the principles of agency. However, in that case, unlike the present case, the broker who had not signed the agreement was merely an individual employee (assistant director) of the brokerage company which had entered into the brokerage agreement with the plaintiff. The *Scher* court held that: "Acts by employees of one of the parties to a customer agreement are equally arbitrable as acts of the principals as long as the challenged acts fall within the scope of the customer agreement." *Scher*, 723 F.Supp. at 216. In *Scher* it was obvious that the parties to the customer agreement intended it to apply to both the brokerage firm and the individual employees through which the firm acted. Because neither Stratton nor Koch are employees of Ameritrade, Inc., the *Scher* holding does not apply here.

Finally, the fourth case cited in support of defendants' position, *Cauble*, is inapplicable to the narrow question at issue here. That case addressed the issue of whether an introducing broker had the authority to liquidate a customer's account, and not whether it had standing to enforce an arbitration provision. Thus, *Cauble* does not present relevant authority on the limited issue presented here. *See Mowbray*, 795 F.2d at 1117 (distinguishing *Cauble*).

In *Mowbray*, the First Circuit noted that:

> the difference between this case and *Cauble* is that, unlike the *liquidation* provisions at issue there, it does not follow from the introducing broker's *de facto* control over a client's account that the client originally or subsequently intended that the introducing broker be able to invoke [the clearing broker's] power to compel *arbitration.* [Emphasis in original.]

---

**3.** Notably, the margin agreement at issue in *Nesslage* was also considerably more ambiguous than the agreement before the court. The *Nesslage* agreement stated, in relevant part: "[a]ny controversy arising out of or related to [the account] ... shall be settled by arbitration...." 823 F.2d at 232. By contrast, the agreement at issue in the present case specifically identifies Shaffer and Ameritrade but not Stratton or Koch.

*Id.* The *Mowbray* court also pointed out that a lesser showing of intent is necessary for the court to find that a broker has authority to enforce a liquidation provision than would be necessary to find that a broker has the authority to compel arbitration. Unlike a liquidation provision which "can be characterized as an 'obvious' (and hence, intended) incident of an introducing broker's administrative or supervisory powers over a customer's account," an arbitration provision involves important procedural rights and is not an obvious incident of an introducing broker's supervisory power. *Id.* This court finds the reasoning of the *Mowbray* court persuasive on this issue. The power to compel arbitration will not be deemed to be part of an introducing broker's supervisory power absent a substantial factual showing that the investor knowingly consented to such an exercise of power.

In the present case, there has been no showing that Shaffer knowingly consented to give Stratton and Koch the power to compel arbitration which it gave to Ameritrade.[4] The fact that Shaffer never communicated directly with Ameritrade does not establish that Shaffer intended for the terms of the Ameritrade Brokerage Agreement, which made no mention of defendants, to apply equally to them. Significantly, nothing in defendants' pleadings indicates an *intention* by Shaffer to consent to arbitrate his disputes with defendants. Rather, defendants merely argue that constructive consent must be implied from defendants' relationship with Ameritrade. Significantly, none of the cases cited by defendants support the position that a court may imply constructive consent in the absence of an investor's actual intention (either express—i.e., a written or oral statement, or implied—i.e., from conduct) to be bound by arbitration. Because an agreement to arbitrate entails the abrogation of

an investor's important procedural right to be heard in federal court, the court will not imply an investor's "constructive" consent based solely upon the relationship between the introducing and clearing brokers.

Defendants also argue that "Stratton did not draft its own arbitration clause, reasonably assuming that any and all provisions in the account agreement applied both to it and to Ameritrade." Defendants' Motion for Stay, p. 9. The court finds that any such assumption by Stratton was not reasonable.[5] Had Stratton intended for the Brokerage Agreement to apply to it, it could at least have inserted its name in the space provided for introducing broker in that agreement. Secondly, as an established securities broker, Stratton must be presumed to have some degree of sophistication regarding the protection of its rights. *See Mowbray*, 795 F.2d at 1118. A plain reading of the Brokerage Agreement reveals that neither defendant was a party to the agreement or its arbitration clause and the defendants have not pleaded any facts which persuade us otherwise.

### CONCLUSION

For the reasons discussed above, this court will not compel arbitration of Shaffer's dispute with Stratton and Koch. Defendants' motion to stay these proceedings is denied.

IT IS SO ORDERED.

---

4. The factual allegations concerning whether an agreement to arbitrate exists between plaintiff and defendants appear to be largely undisputed. Neither party has requested an evidentiary hearing pursuant to 9 U.S.C. § 4, and the court's factual findings therefore are based upon the parties' written pleadings. *See Mowbray,* 795 F.2d at 1115, n. 7.

5. Even assuming that Stratton's alleged assumption was reasonable, this fact would not change the result here. As stated above, no agreement exists without a meeting of the minds between all parties concerned, particularly the party (in this case, Shaffer) against whom the alleged agreement is being asserted.