Orin D. **EYCHNER** and Julia I. **Eychner,**
**Plaintiffs–Appellees,**

v.

Richard **VAN VLEET,** Defendant–
Appellant.

No. 92CA1071.

Colorado Court of Appeals,
Div. I.

Feb. 25, 1993.

As Modified on Denial of Rehearing
April 1, 1993.

---

Sommermeyer, Wick, Dow & Campbell, Robert N. Clark, Fort Collins, for plaintiffs-appellees.

Hopper and Kanouff, P.C., Gene R. Thornton, Denver, for defendant-appellant.

Opinion by Judge DAVIDSON.

In this action by plaintiffs, Orin D. and Julia I. Eychner, concerning alleged investment recommendations made to them by defendant, Richard Van Vleet (broker), the broker appeals from the trial court's order denying his motion to compel arbitration. We vacate the order and remand to the trial court for an evidentiary hearing.

The Eychners filed suit for compensatory and punitive damages against broker asserting claims for breach of promissory notes, breach of contract, securities fraud, common law fraud, breach of fiduciary duty, outrageous conduct, and intentional infliction of emotional distress.

In their complaint, the Eychners alleged that broker began handling their investments in 1979 while he was employed by E.F. Hutton—later Shearson Lehman Hutton, Inc. (Hutton), which is not a party to this action—and that, following broker's departure from Hutton, he continued to act as their broker and investment advisor.

They further alleged that, in 1987, while acting in his fiduciary capacity as their broker and investment advisor, broker solicited their investment in a venture known as Metal Plant, Ltd. Thereafter, on ten separate occasions from August 3, 1987, through January 9, 1990, they invested a total of $51,000 in that entity, making checks payable to broker and receiving promissory notes in return.

Although the Eychners did not specify in their complaint whether broker was employed by Hutton at the time of the transactions, it is apparent from later pleadings that they thought that these investments occurred after broker's departure from Hutton. Parties now concede, however, that three or four of the subject transactions occurred while broker was still Hutton's employee.

In April 1991, broker and the Eychners entered into a contract whereby broker agreed to reimburse the Eychners for all sums paid to him relating to these ten investments. After broker failed to make payments on that contract, the Eychners brought this action. In their complaint, in addition to claims for breach of the notes and the contract, they alleged that broker, by recommending that they invest in Metal Plant, Ltd. and by failing to perform his guarantee on the notes, committed securities fraud and violated certain statutory and common law fiduciary duties owed to them.

In response to the complaint and as is relevant here, broker filed a motion to dismiss on the grounds that, *inter alia*, the court lacked subject matter jurisdiction because the dispute between the parties was subject to arbitration. Specifically, he moved the court to compel arbitration, pursuant to the Uniform Arbitration Act of 1975, § 13-22-201, et seq., C.R.S. (1987 Repl.Vol. 6A), and the United States Arbitration Act, 9 U.S.C. § 1, et seq. (1988), based on the existence of an arbitration clause in a client agreement between the Eychners and Hutton.

That arbitration clause provides in pertinent part:

> Any controversy arising out of or relating to any of my [the Eychners'] accounts, to transactions with you [Hutton], your officers, directors, agents and/or employees for me, or to this agreement, or the breach thereof, or relating to transactions or accounts maintained by me with any of your predecessor firms [from] the inception of

such accounts, shall be settled by arbitration.

The trial court, proceeding as required under § 13–22–204, C.R.S. (1987 Repl.Vol. 6A) to determine broker's request to compel arbitration, denied the motion without an evidentiary hearing, ruling that broker "failed to establish [that] the parties agreed to arbitrate or that the purported arbitration agreement was applicable to the alleged transactions between plaintiffs and defendants."

This interlocutory appeal followed pursuant to § 13–22–221(1)(a), C.R.S. (1987 Repl. Vol. 6A).

## I.

Broker contends that the trial court erred by failing to compel arbitration. Specifically, broker argues that the arbitration clause "plainly requires arbitration of disputes over investment recommendations made by E.F. Hutton's employees to be submitted to binding arbitration." Thus, since this controversy involves recommendations to and transactions for the Eychners by broker while he was employed by Hutton, he asserts that we should determine, as a matter of law, that the controversy must be arbitrated. Because we conclude that the arbitration provision is not so broad as broker asserts and may not cover issues here in dispute and because there are factual questions which must be resolved in that regard by the trial court, we disagree with broker's contention.

## A.

■ A valid and enforceable arbitration provision divests the court of jurisdiction over all arbitrable issues. *Mountain Plains Constructors, Inc. v. Torrez*, 785 P.2d 928 (Colo.1990). The question of arbitrability is for the court to decide in the first instance. *Jefferson County School District No. R–1 v. Shorey*, 826 P.2d 830 (Colo.1992).

■ In resolving a motion to compel arbitration, the court must inquire whether there exists a valid agreement to arbitrate between the parties to the action, *Zdeb v. Shearson Lehman Brothers*, 674 F.Supp. 812 (D.Colo. 1987); *see Shorey v. Jefferson County School District No. R–1*, 807 P.2d 1181 (Colo.App. 1990), and whether the issues being disputed are within the scope of that agreement. *See Nelson v. Lange*, 229 Ill.App.3d 909, 171 Ill.Dec. 539, 594 N.E.2d 391 (1992).

Pursuant to § 13–22–204(1), C.R.S. (1987 Repl.Vol. 6A), upon application by a party showing an agreement to arbitrate, a court may refuse to compel arbitration "only upon a showing that there is no agreement to arbitrate or if the issue sought to be arbitrated is clearly beyond the scope of the arbitration provision." *Shorey v. Jefferson County School District No. R–1, supra*, at 1183. *Cf. Associated Natural Gas, Inc. v. Nordic Petroleums, Inc.*, 807 P.2d 1195 (Colo.App. 1990).

■ The right to compel arbitration is derived from contract. Therefore, one who is not a party to the contract generally lacks standing to compel, or to be subject to, arbitration. *Mutual Benefit Life Insurance Co. v. Zimmerman*, 783 F.Supp. 853 (D.N.J. 1992). However, a nonparty may fall within the scope of an arbitration agreement and may bring an action on such contract if that is the intent of the parties. *See Jefferson County School District No. R–1 v. Shorey, supra* (intended third-party beneficiary); *McPheeters v. McGinn, Smith & Co.*, 953 F.2d 771 (2d Cir.1992) (agent of a party or intended beneficiary of contract); *Howells v. Hoffman*, 209 Ill.App.3d 1004, 154 Ill.Dec. 713, 568 N.E.2d 934 (1991) (disclosed employee).

Here, the Eychners do not dispute the existence of a valid client agreement with Hutton or that the arbitration clause would apply if Hutton were a party to this action. Further, although broker is not a party to that client agreement, the Eychners appear to concede that broker, as an employee of Hutton, may compel arbitration of those issues which Hutton and the Eychners agreed were arbitrable.

They argue, however, that the issues being litigated are not encompassed within that arbitration clause. Specifically, they argue that because the particular transactions in question were not with Hutton and do not concern any of the Eychners' accounts with

Hutton, they were not within the contemplation of the parties at the time of the agreement and are not arbitrable issues.

### B.

The issue, then, as framed by the parties, is whether the arbitration clause covers any investment transactions between a Hutton employee and a Hutton client by the mere fact of that employment, as broker asserts, or only those transactions between a Hutton employee and a Hutton client which pertain to Hutton accounts. We conclude that only those transactions between broker and the Eychners which involve Hutton accounts are subject to arbitration.

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409, 1417 (1960); *Shaffer v. Stratton Oakmont, Inc.,* 756 F.Supp. 365 (N.D.Ill. 1991) (public policy in favor of arbitration does not give courts license to compel arbitration when there has been no agreement to arbitrate); *Shorey v. Jefferson County School District No. R–1, supra* (courts cannot compel arbitration if the issue sought to be arbitrated is clearly beyond the scope of the arbitration provision).

To determine the scope of an arbitration clause, a court must examine the wording of the clause and the terms of the contract in which the clause is included. *Nelson v. Lange, supra.* The court must strive to ascertain and give effect to the mutual intent of the parties, *see Pepcol Manufacturing Co. v. Denver Union Corp.,* 687 P.2d 1310 (Colo. 1984), and must consider the subject matter and purposes to be accomplished by the agreement. *See Chew v. International Society for Krishna Consciousness,* 738 P.2d 57 (Colo.App.1987).

Accordingly, we look to the client agreement, which the Eychners entered into when they opened a money market fund with Hutton and which contains the arbitration clause, to ascertain the intent of the those parties.

That client agreement begins: "In considerations of [Hutton] accepting my account and agreeing to act as my broker, I [the Eychners] agree to the following *with respect to any of my accounts.*" (emphasis added) The agreement then defines the numerous rights and obligations of the parties regarding those accounts and, in particular, describes in detail the various transactions which Hutton is authorized to perform in those accounts. The entire thrust of the document is directed at the account or accounts of the client, *i.e.,* the Eychners.

As is pertinent here, the arbitration clause of the agreement provides that: "Any controversy arising out of or relating to any of my accounts, to transactions with you [Hutton], your officers, directors, agents and/or employees for me, or to this agreement, or the breach thereof, or relating to transactions or accounts maintained by me with any of your predecessor firms [from] the inception of such accounts, shall be settled by arbitration."

Reading this provision in the context of the entire agreement, we conclude the term "transactions" used in the arbitration clause refers specifically and only to transactions performed in the Eychners' accounts as described throughout the agreement. *Compare Azriliant v. Shearson Lehman/American Express Inc.,* Fed.Sec.L.Rep. ¶ 93,393, 1987 WL 16971, (September 10, 1987) ("transactions" which, by the language of the client agreement, are limited to options do not encompass other transactions occurring in the account) *with Prudential–Bache Securities, Inc. v. Goldin,* (Fed.Sec.L.Rep. ¶ 95,-397, 1990 WL 127006, June 22, 1990) (in an action against brokerage firm which included claim for negligent supervision of employees, arbitration clause applied to employees' transactions for clients not involving their accounts).

Thus, broker's assertions to the contrary notwithstanding, whether the arbitration provision requires this controversy to be settled by arbitration does not depend solely upon whether broker was an employee of Hutton, but also upon whether the transactions in question involve the Eychners' accounts with Hutton. Therefore, in order to decide the arbitrability of this action, what remains to

be determined is the factual question whether the transactions involved Hutton accounts.

### C.

■ Both parties urge this court to decide the question of arbitrability as a matter of law, if possible. As we have held, this would require us to determine whether these transactions involved the Eychners' accounts with Hutton.

In this regard, we note that there is nothing in the record to indicate that the transactions in question involved Hutton accounts. However, we observe that broker's request for an evidentiary hearing, which he repeats on appeal and which the Eychners concede might be necessary to resolve disputed factual issues, was denied by the trial court.

■ Moreover, unlike a motion to dismiss for failure to state a claim brought pursuant to C.R.C.P. 12(b)(5), broker's § 13–22–204 motion to compel arbitration is a motion to dismiss for lack of subject matter jurisdiction which cannot be resolved by the presumptive truthfulness of the complaint, but which must be determined in a factual hearing. *Guthrie v. Barda*, 188 Colo. 124, 533 P.2d 487 (1975) (determination of disputed issues of fact necessary to ascertain whether arbitration clause was valid, and hence, whether the court had jurisdiction to proceed). *Cf.* 9 U.S.C. § 4 (1988); § 13–22–204; *Trinity Broadcasting of Denver, Inc. v. The City of Westminster*, 848 P.2d 916 (Colo.1993) (on 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, trial court is the factfinder which determines in the pretrial context whether jurisdictional prerequisites have been met).

Most importantly, the very issue to be determined—whether the transactions were in Hutton accounts—has been defined by us on appeal and, thus, was neither specifically litigated nor addressed by the trial court.

Therefore, we conclude that, based on the very limited record before us, a determination as a matter of law would be inappropriate. Hence, we remand the matter to the trial court for a hearing and to allow the parties to present evidence, if any, as to the

issue of whether the transactions involved the Eychner's accounts with Hutton.

### II.

■ For purposes of the remand, we also address the question raised at oral argument whether, if the trial court determines that the initial transactions involve Hutton accounts, all of them must be arbitrated. We conclude that, in such event, all are arbitrable.

By its plain language, the contract requires that any controversy "arising out of or relating to" such transactions must be settled by arbitration.

In their complaint, the Eychners make no distinction among the transactions, alleging that broker "solicited their investment in a venture known as Metal Plant, Ltd." Although there were ten total investment transactions made, it is undisputed that all were invested in the same company and all were made in the same manner—checks made to broker in return for promissory notes. Moreover, in their argument as well as in the complaint, the Eychners address the ten investments collectively and assert all claims against broker on the basis of his conduct regarding the collective transactions.

Thus, even if the trial court determines that only the initial transactions pertain to Hutton accounts, under the circumstances here, any controversy relating to the remaining transactions would necessarily arise out of or relate to the earlier transactions. In such event, by the language of the contract, all would be subject to arbitration. *Cf. Zdeb v. Shearson Lehman Brothers, supra* (tortious acts committed subsequent to the employment relationship arose out of claims subject to the arbitration provision); *Bernstein v. Shearson/American Express Inc.*, Fed.Sec.L.Rep. ¶ 93,392, 1987 WL 16964, (September 9, 1987) ("controversy arising out of or relating to" accounts and transactions covers previously established accounts between the same parties).

We conclude, therefore, that, as a matter of law, to the extent the trial court finds that the initial transactions deal with Hutton accounts, all are arbitrable. *Cf. Sandefer v.*

*District Court,* 635 P.2d 547 (Colo.1981); *Kostakos v. KSN Joint Venture No. 1,* 142 Ill.App.3d 533, 96 Ill.Dec. 862, 491 N.E.2d 1322 (1988).

The order is vacated, and the cause is remanded to the trial court for an evidentiary hearing to determine whether the transactions in question pertain to the clients' accounts with Hutton and, therefore, are subject to arbitration.

PIERCE, J., concurs.

METZGER, J., dissents.

Judge METZGER dissents.

I respectfully dissent. I believe the trial court correctly determined that defendant Van Vleet "has failed to establish that the parties agreed to arbitrate or that the purported arbitration agreement was applicable to the alleged transactions between [the Eychners] and defendants."

The pleadings in this case do not support Van Vleet's demand for arbitration. The complaint does not allege that Van Vleet acted as an agent or employee of Hutton or, indeed, that he was acting within the course and scope of his employment at all in the transactions at issue. It does not allege any connection whatsoever between the Eychners' accounts at Hutton and the transactions now in dispute.

Likewise, the trial court properly determined that the arbitration provision in the Hutton contract was not intended to include the dispute that gave rise to the lawsuit. The contract specifically provides that it is binding on the Eychners and their heirs, executors, successors, administrators, assigns, committee, and conservators but that it is binding only on Hutton and its assigns and successors. There is no evidence in the record or even an allegation that Van Vleet is a successor or assignee of Hutton. Thus, the terms of the contract Van Vleet relies on belie his argument.

Additionally, the facts in the record provide no assistance to Van Vleet's position. The record is devoid of any hint of a connection between the Eychners (or their transactions) and Hutton. All of the checks show Van Vleet as payee, and neither Hutton's name nor a Hutton account number appears on the checks. There is nothing to show that any of the checks were deposited in a Hutton account or that Hutton received any of the money involved.

Moreover, the record contains a stipulation/agreement dated April 1991, between Van Vleet and the Eychners in which Van Vleet individually promised to pay to the Eychners the $66,019.17 he owed them as of that date. The stipulation/agreement goes on to provide:

> Because of Rick Van Vleet's security license, Orin Eychner and Julia Eychner agree that they shall not cause a judgment to be entered against Van Vleet, as long as he makes payments in accordance with the enclosed schedule and has otherwise complied with the other terms of this stipulation.

> . . . .

> In the event that Rick Vanvleet [sic] shall fail to make any of the payments when due, or otherwise defaults on any other terms and conditions of this stipulation, then Orin Eychner and Julia Eychner, or the survivor, shall have the right to immediately seek and obtain a judgment for the entire amount which is due and owing. Rick Van Vleet agrees not to file an answer.

> . . . .

> If suit is necessary under the terms of this agreement, Rick Van Vleet agrees to pay to Orin Eychner and Julia Eychner, or the survivor, attorneys' fees, costs, expenses, fees and other charges.

Neither this document nor its accompanying promissory note mentions Hutton, any Hutton account, or any arbitration.

The majority here holds that "only those transactions between [Van Vleet] and the Eychners which involve Hutton accounts are subject to arbitration." However, there is nothing in this record to indicate that the transactions were related either factually or legally to the Eychners' accounts with Hutton. *Lowell Staats Mining Co. v. Pioneer*

*Uravan, Inc.,* 596 F.Supp. 1428 (D.Colo. 1984). The burden of showing this nexus falls on Van Vleet, who is the one seeking arbitration. He has utterly failed to meet it. Therefore, there is no reason to conduct a hearing.

Consequently, I would affirm the trial court's order and deny Van Vleet's request for arbitration.