# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

| | |
|---|---|
| IN RE: | ) |
| | ) |
| ESTATE OF GEORGE BRECKENRIDGE WYATT, | ) |
| | ) |
| MARGARET WYATT ENGMAN, GEORGE BRECKENRIDGE WYATT, JR., and THOMAS E. WYATT, Co-Personal Representatives of the Estate of George Breckenridge Wyatt, | ) |
| | ) |
| Plaintiffs/Appellees, | ) |
| | ) |
| vs. | ) |
| | ) |
| VISTA FAMILY OF MUTUAL FUNDS by and through its plan administrator CHASE MANHATTAN BANK, N.A., INVESTMENT MANAGEMENT & RESEARCH, INC., and GARY WEBSTER, | ) |
| | ) |
| Defendants/Appellants. | ) |

FILED

August 17, 1998

Madison Chancery No. 94-10452

**Cecil Crowson, Jr.**

**Appellate Court Clerk**
Appeal No. 02A01-9706-PB-00132

APPEAL FROM THE PROBATE COURT OF MADISON COUNTY
AT JACKSON, TENNESSEE

THE HONORABLE WALTER BAKER HARRIS, JUDGE

For the Plaintiffs/Appellees:

Nancy L. Choate
Jackson, Tennessee

For the Defendants/Appellants:

Christopher G. Lazarini
Memphis, Tennessee

**AFFIRMED**

HOLLY KIRBY LILLARD, JUDGE

CONCUR:

W. FRANK CRAWFORD, P.J., W.S.

HEWITT P. TOMLIN, JR., SP.J.

**Opinion**

This case involves the interpretation of the arbitration clause in the customer agreement for an investment account. The personal representatives of an estate sought damages for alleged wrongdoing with regard to assets of the estate. Certain defendants filed a motion to stay the proceedings and compel arbitration. The trial court held that the arbitration clause did not apply in this case and denied the motion. We affirm.

This matter arose out of the administration of the Estate of George Breckenridge Wyatt ("Decedent"). Defendant/Appellant Gary Webster ("Webster") is an employee of Defendant/Appellant Investment Management & Research, Inc. ("IMR"), a securities broker/dealer. Webster served as Decedent's financial advisor before Decedent's death. In July 1990, Decedent opened an IRA account with Webster and IMR serving as introducing broker. IMR negotiated with Raymond James & Associates ("RJA"), so that RJA administered the account, and served as clearing broker for the transaction. An introducing broker typically does not retain a seat on the requisite stock exchange and, thus, maintains a contractual relationship with a clearing broker, who retains a seat on the exchange.[1]

As part of this IRA transaction, Decedent executed a "Customer Agreement." This agreement contained an arbitration clause. In pertinent part, the arbitration clause states:

> The undersigned client agrees, and by carrying an account for the undersigned client you agree, that all controversies which may arise between us concerning any transaction or the construction, performance of [sic] breach of this or any other agreement between us pertaining to securities or other property, whether entered into prior, on, or subsequent to the date hereof, shall be determined by arbitration. Any arbitration shall be in accordance with the rules, then applying, of either the National Association of Securities Dealers, Inc., New York Stock Exchange, Inc., American Stock Exchange, Inc., or where appropriate, the Chicago Board Options Exchange, Inc., as I may elect. If I fail to make this election within five days of receipt of a written request from Raymond James & Associates, Inc. to make such election, then I authorize Raymond James & Associates, Inc. to make this election. . . . I specifically agree that at least one of the arbitrators must be knowledgeable to the type of securities transactions in my account at Raymond James & Associates, Inc., or knowledgeable as to any investment made through, or effected on, my behalf by Raymond James & Associates, Inc.

The names of both IMR and RJA are stamped on the top of the agreement. Signatories to the agreement included Decedent, Webster, another representative of IMR, and a representative of RJA.

---

[1] For a discussion of the relationship between a clearing broker and an introducing broker, *see Shaffer v. Stratton Oakmont, Inc.*, 756 F. Supp. 365 (N.D. Ill. 1991); *Ahn v. Rooney, Pace, Inc.*, 624 F. Supp. 368 (S.D.N.Y. 1985).

In March 1993, Decedent and his wife, Intervening Defendant Sue B. Wyatt ("Widow"), opened a "Vista" mutual fund account. Webster processed the account, but Chase Manhattan Bank ("Chase Manhattan") administered the account. The account was opened as a joint tenancy account and makes no reference to survivorship. The Vista transaction did not include an arbitration agreement. RJA had no involvement with this transaction.

The Plaintiffs/Appellees ("the Administrators") are co-personal representatives of Decedent's estate. After Decedent's death, the Administrators sought to include Decedent's one-half interest in the Vista account as part of the estate. The Administrators alleged that because Tennessee Code Annotated § 66-1-107 (1993) abolishes the right of survivorship for estates held as joint tenants, the Decedent's estate was entitled to the Decedent's one-half interest in the account. Widow, however, claimed that she was entitled to the full amount of the shares, as surviving joint tenant. The Administrators then filed this suit, alleging that Webster, IMR, and Chase Manhattan negligently allowed the Vista account to be established as a survivorship account, that Chase improperly denied the Administrators' request for redemption of the Vista shares, and that Webster intentionally interfered with the Administrators' rights to the Vista shares.[2]

IMR and Webster then filed a motion to dismiss or, in the alternative, to compel arbitration. IMR and Webster argued that the arbitration clause in the IRA customer agreement is broad enough to include the Vista transaction. The Administrators responded that the arbitration clause only applied to transactions involving the Decedent and RJA. They note that RJA was not a party to the Vista transaction and contend that the Vista transaction was therefore outside the purview of the arbitration clause. In a cursory opinion, the trial court denied the motion by IMR and Webster. From this order, IMR and Webster now appeal.

On appeal, IMR and Webster claim that the trial court erred in determining that the arbitration clause in the IRA transaction did not cover the Vista transaction. Appellants IMR and Webster maintain that the Decedent and the Appellants were parties to the IRA transaction and that the broad language of the arbitration clause encompasses the Vista transaction because the Decedent

---

[2] Chase Manhattan responded by filing a Counter-Claim against the Administrators and a Cross-Claim of Interpleader against Widow, who was not yet a party. Widow then asserted her claim to the Vista account shares. Ultimately the trial court entered an Agreed Order of Interpleader, granting the court clerk control over the Vista account shares. Therefore, Chase Manhattan is not a party to this appeal.

and the Appellants were parties to this transaction as well. IMR and Webster note that IMR was a party to the IRA transaction, and argue that it may therefore enforce the arbitration clause. In the alternative, IMR and Webster argue that they may enforce the arbitration clause as a third party beneficiary to the agreement or as the agent of the clearing broker.

There are no factual disputes on appeal; the interpretation of the arbitration clause of the contract is a question of law. *Rapp Constr. Co. v. Jay Realty Co.*, 809 S.W.2d 490, 491 (Tenn. App. 1991). Therefore our review of the judgment below is *de novo* upon the record with no presumption of correctness of the trial court's conclusion of law. Tenn. R. App. P. 13(d); *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995).

This case centers on the customer agreement for the IRA transaction. Webster and IMR emphasize the language in the arbitration clause stating that "*all* controversies which may arise between us concerning any transaction . . . whether entered into prior, on, or subsequent to the date hereof, shall be determined by arbitration" (emphasis added). They stress that the customer agreement was signed by Webster and other IMR employees as well as Decedent and an RJA employee. Because IMR and Webster were parties to this transaction, they assert that they may enforce the contract and compel arbitration with regard to the Vista transaction.

There is no duty imposed upon a party to submit to arbitration in the absence of an agreement requiring such submission. *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1353 (1960). Thus, "the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 3353 (1985). To determine whether the parties intended to arbitrate, the court must examine "their entire agreement." *Perceptics Corp. v. Societe Electronique et Systemes Trindel*, 907 F. Supp. 1139, 1142 (E.D. Tenn. 1992). In *Wilson v. Moore*, 929 S.W.2d 367, 373 (Tenn. App. 1996), we held:

> Contracting parties' intent is embodied in their written agreements. Accordingly, the courts must examine the text of the contract in the context of the entire agreement. Contractual terms should be given their ordinary meaning . . . and should be construed harmoniously to give effect to all provisions and to avoid creating internal conflicts.

(internal citations omitted).

Although this is an issue of first impression in this state, courts in other jurisdictions have

3

addressed similar situations in which an introducing broker has sought to enforce an arbitration clause signed by an investor. These cases, however, have involved circumstances in which the arbitration agreement was more clearly a contract solely between the investor and the clearing broker, since the introducing broker was not a signatory to the agreement. Thus, in these cases, the introducing brokers did not argue that they were a party to the agreement; rather, they argued that they could enforce the agreement as an agent of the clearing broker or as a third party beneficiary to the agreement. *See, e.g., Taylor v. Investors Associates, Inc.*, 29 F.3d 211, 213 (5th Cir. 1994); *O'Connor v. R.F. Lafferty & Co.*, 965 F.2d 893 (10th Cir. 1992); *Mowbray v. Moseley, Hallgarten, Estabrook & Weeden, Inc.*, 795 F.2d 1111 (1st Cir. 1986); *Lenhart v. Westfield Financial Corp.*, 909 F. Supp. 744 (D. Haw. 1995); *Coltrain v. F.N. Wolf & Co.*, 818 F. Supp. 163 (E.D. Va. 1993); *Shaffer v. Stratton Oakmont, Inc.*, 756 F. Supp. 365 (N.D. Ill. 1991);. *Conway v. Icahn & Co.*, 787 F. Supp. 340 (S.D. N.Y. 1990); *Antinoph v. Laverell Reynolds Securities, Inc.*, 703 F. Supp. 1185, (E.D. Penn. 1989); *Church v. Gruntal & Co.*, 698 F. Supp. 465 (S.D.N.Y. 1988).

In this case, IMR and Webster were signatories to the customer agreement. In addition, IMR's name was stamped at the top of the agreement. From this, it appears that IMR and Webster should be deemed parties to the entire contract, including the arbitration clause.

IMR and Webster argue that the first sentence of the arbitration clause indicates that the clause was to apply to "all controversies" concerning the IRA transaction which was the subject of the customer agreement, but also "any other agreement between us . . . whether entered into prior, on, or subsequent to the date hereof. . . ." However, the remainder of the arbitration clause refers repeatedly to RJA, and specifies that at least one of the arbitrators "must be knowledgeable to [sic] the type of securities transactions in my account at Raymond James & Associates, Inc., or knowledgeable as to any investment made through, or effected on, my behalf by Raymond James & Associates, Inc." The name of RJA is stamped at the top of the agreement, as well as the name of IMR. "In construing a contract, the entire contract should be considered in determining the meaning of any or all its parts." *Cocke County Bd. of Hwy. Comm'rs v. Newport Utils. Bd.*, 690 S.W.2d 231, 237 (Tenn. 1985). *See also Gredig v. Tennesse Farmers Mut. Ins. Co.*, 891 S.W.2d 909, 912 (Tenn. App. 1994) ("The language in dispute must be examined in the context of the entire agreement."). Considering the agreement as a whole, it appears that the arbitration clause was intended to apply to controversies concerning an RJA account. Since the case at bar does arise from

4

a dispute concerning an RJA account, the arbitration clause is not applicable. In light of this holding, the remaining issues are pretermitted and the trial court's denial of the appellants' motion to dismiss or compel arbitration is affirmed.

The decision of the trial court is affirmed. Costs on appeal are taxed to the Appellants, for which execution may issue if necessary.

_____
**HOLLY KIRBY LILLARD, J.**

_____
**CONCUR:**

_____
**W. FRANK CRAWFORD, P. J., W.S.**

_____
**HEWITT P. TOMLIN, JR., SP.J.**