Robert M. MOWBRAY and Rose A.
Mowbray, Plaintiffs, Appellants,

v.

MOSELEY, HALLGARTEN, ESTA-
BROOK & WEEDEN, INC. and
Michael French, Defendants, Appellees.

No. 85–1647.

United States Court of Appeals,
First Circuit.

Argued Dec. 2, 1985.

Decided July 3, 1986.

Edward F. Haber, Boston, Mass., was on brief, for plaintiffs, appellants.

James C. Heigham, with whom Choate, Hall & Stewart, Boston, Mass., was on brief, for defendants, appellees.

Before COFFIN, BOWNES and TORRUELLA, Circuit Judges.

TORRUELLA, Circuit Judge.

This action was brought below by plaintiffs-appellants, Robert M. Mowbray and Rose A. Mowbray, against their former stockbroker Michael French, and his employer, a Burlington, Vermont stock brokerage firm known as Moseley, Hallgarten, Estabrook & Weeden, Inc. ("Moseley"). Plaintiffs' basic claim below was for alleged excessive trading or "churning" of their accounts by defendants. Plaintiffs also alleged fraudulent misrepresentation by defendant French in recommending particular investments. Plaintiffs sought to recover damages pursuant to Rule 10b of the Securities Act of 1934 and Rule 10b–5 promulgated thereunder, and pursuant to several state statutory and common law causes of action.

After discovery was completed and less than two months before trial, defendants, citing the Supreme Court decision in *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), moved to compel arbitration on all plaintiffs' claims and for a stay of district court proceedings. The district court allowed the motion without opinion, and this appeal followed.

Five issues are raised on appeal, but only two of these are necessary for our decision today. First, defendants-appellees question this court's jurisdiction, arguing that the district court order compelling arbitration is not an appealable order. For the reasons stated below, we disagree and find that appellate jurisdiction exists. Second, plaintiffs-appellants argue that the district court erred in finding defendants to be the beneficiaries of an arbitration agreement signed between plaintiffs and Securities Settlement Corporation, a "clearing house" broker *not* a party to this suit. For the reasons stated below, we agree with appellants that appellees were not parties to the arbitration agreement, and hence, could not invoke it. Thus, on this ground alone, we find that the district court erred in compelling arbitration and remand for trial to proceed on the merits.[1]

## I. *Appellate Jurisdiction*

The motion filed by defendants-appellees below was brought pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 3 and 4.[2] Spe-

---

1. Given our holding that defendants-appellees could not properly invoke the arbitration agreement, we do not address the remaining three issues raised by appellant. These claims are (1) that appellees had waived the right to compel arbitration by requesting it on the eve of trial; (2) that the Rule 10b–5 claims are not arbitrable; and (3) that, assuming the 10b–5 claims are non-arbitrable, the district court could not stay trial on the 10b–5 claims pending arbitration of the state law issues.

2. 9 U.S.C. §§ 3 and 4 provide as follows:

§ 3. **Stay of proceedings where issue therein referable to arbitration**

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

§ 4. **Failure to arbitrate under agreement; petition to United States court having jurisdiction for order to compel arbitration; ... hearing and determination**

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.... The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing

cifically, the motion requested "that plaintiffs be ordered to arbitrate all claims set forth in their complaint ... and that further proceedings in this action be stayed pending such arbitration." Thus, defendants below sought, and were granted, both a § 4 order to compel arbitration and a § 3 order to stay proceedings pending such arbitration.

On appeal, defendants-appellees assert that the "mixed" § 3 and § 4 order below was not a "final" order, and hence, is not appealable. To support this claim of lack of appellate jurisdiction, defendants-appellees make the following three-step argument: (1) that despite the explicit request and granting of a stay under § 3 of the Arbitration Act, the "thrust" of the motion below was to compel arbitration under § 4 of the Act; (2) that, under *Hartford Financial Systems, Inc. v. Florida Software Services, Inc.*, 712 F.2d 724 (1st Cir.1983), § 4 orders to compel arbitration are generally not appealable; and (3) that because the motion and order below is "essentially" a § 4 motion and order, it cannot be appealed.

■ Appellees misconstrue both the law and the nature of the order below. First, we do not accept appellees' contention that the motion and order below "essentially" involved § 4. Rather, the explicit request, as granted, was for an order to compel *and a stay*. Thus, the current appeal involves a "mixed" § 3 and § 4 order both compelling arbitration and staying district court proceedings.

Second, as a matter of law, and given the fact that plaintiffs-appellants' underlying action is "legal" rather than "equitable" in nature, the characterization of the order below as "essentially" a § 4 order or as a § 4 order joined to a § 3 order is immaterial. As plaintiffs-appellants note, § 4 orders can always be appealed under 28 U.S.C. 1292(a)(1)—whether standing alone, "embedded" to ongoing litigation, or joined to § 3 orders—where the § 4 order fits within the *"Enelow-Ettelson"* exception, i.e., where the underlying action rests in law and not in equity. *See Hartford Financial Systems, supra* at 729; *Langley v. Colonial Leasing Co. of New England*, 707 F.2d 1, 5 (1st Cir.1983); *see also Ettelson v. Metropolitan Life Insurance Co.*, 317 U.S. 188, 63 S.Ct. 163, 87 L.Ed. 176 (1942); *Enelow v. New York Life Insurance Co.*, 293 U.S. 379, 55 S.Ct. 310, 79 L.Ed. 440 (1935).[3] Thus framed, the issue of our appellate jurisdiction over the order below—whether viewed as a § 4 order standing alone or as a § 4 order joined to a § 3 order—turns on whether plaintiffs-appellants' action lies in law or in equity.

■ To determine whether an action is brought in law or in equity, courts have applied either a "historical" or "dominant

---

the parties to proceed to arbitration in accordance with the terms of the agreement.... If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default, or if the matter in dispute is within admiralty jurisdiction, the court shall hear and determine such issue. Where such an issue is raised, the party alleged to be in default may, except in cases of admiralty, on or before the return day of the notice of application, demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure, or may specially call a jury for that purpose....

**3.** Under *Langley*, while § 3 orders are only appealable as "injunctions" under 28 U.S.C. 1292(a)(1) if they fit within *"Enelow-Ettelson,"*

§ 4 orders can be appealed both as injunctions under *Enelow-Ettelson* and as "final" orders under 28 U.S.C. 1291, but the latter only applies where the § 4 order "is brought 'in an independent proceeding' before litigation on the underlying claim is begun." *Langley, supra* at 4, citing *Standard Chlorine of Delaware, Inc. v. Leonard*, 384 F.2d 304, 308 (2d Cir.1967). Given that we find the § 4 and § 3 orders before us are appealable under *Enelow-Ettelson*, we do not decide whether the § 4 order would be appealable as a "final" order entered in "an independent proceeding," or not appealable as "embedded" in ongoing litigation. We note, however, that the characterization of the § 4 order as "embedded" seems appropriate where the § 4 order is joined to a § 3 order, *see, e.g., Hartford Financial Systems, supra* at 729, and especially where, as here, the § 4 order was rendered after litigation was well underway.

purpose" test. *See* 16 Wright, Miller, Cooper & Gressman, *Federal Practice and Procedure*, § 3923, pp. 61–63, n. 36–38, *and cases cited therein*. The historical test involves an inquiry as to whether, given the prayers in the complaint, the action historically could have been brought as an action in equity. *Id.* Thus, if due to prayers for equitable relief, the suit originally could have been brought in equity, then an "equitable" characterization of the underlying suit would be proper, and appellate jurisdiction would not exist. *See USM Corporation v. GKN Fasteners, Ltd.*, 574 F.2d 17, 22 & n. 10 (1st Cir.1978). Moreover, the presence of legal along with equitable prayers in the complaint would not be fatal to the "equitable" characterization of the action, since equity courts presumably would exercise jurisdiction over the legal claims under the doctrine of "equitable clean-up." *Id.*

Despite our intimations in *USM Corporation, supra* at 22, that the historical test may be necessary, we are reluctant to apply it in this case and instead, along with every other circuit that has addressed the matter, opt to apply the "dominant purpose" test initially announced by Judge Friendly in *Schine v. Schine*, 367 F.2d 685, 688 (2d Cir.1966) (Friendly, J., concurring). Under this test, while "any fair doubt [should be] resolved against the claim that the action was predominantly one at law," *id.*, a "legal" characterization of the underlying action (and hence, appellate jurisdiction) is permissible where the complaint is "wholly or basically and predominantly an action at law," *Alexander v. Pacific Maritime Ass'n*, 332 F.2d 266, 277 (9th Cir. 1964), and where the prayers for equitable relief, if present, are "merely incidental."

*Standard Chlorine of Delaware, Inc. v. Leonard*, 384 F.2d 304, 309 (2d Cir.1967); *Medtronic, Inc. v. Intermedics, Inc.*, 725 F.2d 440, 444–445 (7th Cir.1984) (Posner, J.) ("the equitable relief sought [must be] more than merely incidental" to preclude appellate jurisdiction); *Lee v. Ply\*Gem Industries, Inc.*, 593 F.2d 1266, 1269 (D.C. Cir.), *cert. denied*, 441 U.S. 967, 99 S.Ct. 2417, 60 L.Ed.2d 1073 (1979) (the "presumption [is] that the pending action is equitable, but that may be overborne if the request for equitable relief is incidental or clearly subordinate to essentially legal claims"); *Thompson v. House of Nine, Inc.*, 482 F.2d 888, 890 (5th Cir.1973) (same); *Chapman v. International Ladies' Garment Workers' Union*, 401 F.2d 626, 629 (4th Cir.1968) (same).[4]

Applying the dominant purpose test to the instant case, we first note that plaintiffs case is brought as a declaratory judgment, "a chameleon-like statutory remedy which is neither 'legal' nor 'equitable',", *Hartford Financial Systems, supra* at 727, and that courts faced with requests for declaratory relief in these circumstances have sought to determine whether, in the absence of the Declaratory Judgment Act, the suit brought would have been legal or equitable in nature. *See Diematic Manufacturing Corp. v. Packaging Industries, Inc.*, 516 F.2d 975, 978 (2d Cir.), *cert. denied*, 423 U.S. 913, 96 S.Ct. 217, 46 L.Ed.2d 141 (1975); *Wallace v. Norman Industries, Inc.*, 467 F.2d 824, 827 (5th Cir.1972); *American Safety Equipment Corp. v. J.P. Maguire & Co.*, 391 F.2d 821, 824 (2d Cir.1968).

As we now enter the "Serbonian Bog" imposed by *Enelow-Ettelson*,[5] our inquiry

---

4. For a stronger statement, and perhaps further tightening, of the requirement that prayers for equitable relief be incidental, *see Mellon Bank, N.A. v. Pritchard, Keang Nam Corp.*, 651 F.2d 1244, 1249 (8th Cir.1981) ("a complaint praying for a mix of equitable and legal relief will be deemed equitable, unless the equitable claim is so insubstantial as to be considered frivolous.").

5. We are aware that some courts and commentators have urged abandonment of the *Enelow-Ettelson* doctrine. *See* Wright, Miller, Cooper &

Gressman, *Federal Practice and Procedure*, § 3923 at 64–66 (1977); *Hayes v. Allstate Ins. Co.*, 722 F.2d 1332, 1337–1338 (7th Cir.1983) (Posner, J., dissenting) (the enactment of § 1292(b) "just may provide a lever for the lower court bold enough to use it to unseat" *Enelow-Ettelson*); *Mar-Len of Louisiana, Inc. v. Parsons-Gilbane*, 732 F.2d 444, 445–447 (5th Cir. 1984) (Rubin, J., dissenting) ("[b]ecause the Supreme Court has not yet had an occasion to put

is whether, absent the availability of declaratory relief, the action brought would have been legal in nature, and also, whether the prayers for equitable relief are "merely incidental" in an action that is "wholly or basically and predominantly one at law." *See Langley v. Colonial Leasing Co. of New England,* 707 F.2d 1, 6 (1st Cir.1983). Applying these tests, we find, for the reasons stated below, that plaintiffs-appellants' action is "legal" under *Enelow-Ettelson,* and accordingly, conclude that appellate jurisdiction exists.

Plaintiffs' complaint contains nine relevant prayers for relief, eight of which seek *damages* from the defendants upon a district court finding of violations of Rule 10b–5 under the federal securities law as well as breaches of fiduciary duty under plaintiffs' common law fraud and state law claims.[6] Plaintiffs' only prayer for equitable relief was that the district court "issue a permanent injunction against the [defendants], enjoining them from violating Rule 10b–5 of the Securities and Exchange Commission, Title 9, Sec. 2453 and Title 9, Sec. 4224 of the laws of the State of Vermont."

Following the mandate that we resolve "any fair doubt against the claim that the action was predominantly one at law," *Schine, supra* at 688, and viewing the complaint "with an eye toward a finding of nonappealability," *Mellon Bank, supra* at 1249, we do not find plaintiffs' isolated plea for an injunction against future securities law violations by defendants as overriding the clear goal of plaintiffs' complaint for a

legal remedy, i.e., damages. In short, we do not regard plaintiffs' complaint as generating any fair doubt that the action below was in law. Finally, because the crux of plaintiffs' action was allegations of federal securities law violations, we also note that, absent the availability of declaratory relief, the action filed would have been a legal one seeking damages, invoking federal jurisdiction under the Securities Act of 1934. Thus, because the underlying action was basically and predominantly one at law, and because, absent the availability of declaratory relief, the action brought would have been legal in nature, we conclude that appellate jurisdiction exists to review the § 3 and § 4 orders below.

## II. Whether the Defendants-Appellees Could Invoke the Arbitration Agreement Signed Between Plaintiffs and Securities Settlement Corporation

The arbitration clause at issue in this case is part of a Customer Agreement ("Agreement") signed by plaintiffs and Securities Settlement Corporation ("SSC"), a "clearing house" broker not a party to this suit. While the Agreement tangentially refers to defendants in their "introducing firm" role, the clause providing for compulsory arbitration does *not* mention defendants and defendants did *not* in fact sign the Agreement.[7]

On appeal, plaintiffs-appellants argue for a literal and hence narrow construction of the parties to the arbitration clause and to the Agreement generally. Thus, appel-

---

an end to the rule's unhappy life, we should undertake the task").

**6.** Plaintiffs' damages claims contain three elements: (1) the actual losses suffered by plaintiffs; (2) the *defendants' unjust enrichment;* and (3) punitive damages. We recognize that a claim for damages due to unjust enrichment is equitable in nature; however, we regard the prayer for unjust enrichment to be incidental to the prayers for actual and punitive damages.

**7.** Under 9 U.S.C. § 4, where the "making of the arbitration agreement" is in issue, the district court is required to hold a hearing to decide disputed facts. The parties in this case, however, did not request such a hearing below and do not do so on appeal. Rather, defendants-ap-

pellees, in support of their motion to compel arbitration, attached the Customer Agreement and an affidavit of counsel stating that the deposition testimony of defendant Robert Mowbray revealed he had signed the Agreement "in connection with plaintiff's account with defendant Moseley." Plaintiffs, in opposing defendants' motion, did not dispute defendants' factual allegations but argued that, even accepting defendants' allegations as true, no agreement to arbitrate could be found. Thus, it is in the context of no request for an evidentiary hearing and no dispute regarding the moving party's factual allegations that we decide whether an agreement to arbitrate exists.

lants assert that the agreement can only be invoked by its signatory, SSC, and not by defendant Michael French nor defendant Moseley, each a *non*signatory. To support their conclusions, plaintiffs-appellants assert that the continued reference in the Agreement to defendants reveals that "the drafters knew full well how to include [defendants] ... when that was the intention." Thus, appellants suggest that the omission of defendants from the clause allowing arbitration and as signatories should be regarded as purposeful.

Defendants-appellees offer two grounds upon which we can find a "meetings of the minds" between plaintiffs and defendants below on the issue of compulsory arbitration. First, citing *Okcuoglu v. Hess, Graut & Co., Inc.,* 580 F.Supp. 749 (E.D. Pa.1984), defendants assert that the conduct of the parties below render defendants the "agents" of the signatory SSC; thus, as agent of SSC, defendants argue that they can invoke SSC's contingent right to have disputes regarding it subject to arbitration. Second, citing *Cauble v. Mabon Nugent & Co.,* 594 F.Supp. 985 (S.D.N.Y.1984), defendants-appellees argue that they, as the introducing brokers, are third party beneficiaries of the arbitration provisions of the Agreement signed between plaintiffs and SSC, the clearing house broker.

For reasons stated more fully below, we find each of these cases distinguishable on their facts, and therefore, because we are unable to find any other theory supporting a contract between plaintiffs and defendants on the issue of arbitration, we conclude that the district court's order to compel arbitration must be vacated and that trial below must proceed.

As the defendants-appellees note, *Okcuoglu, supra,* involved a claim that options transactions had taken place where not authorized, and that when transactions were authorized, the buy or sell would not occur. Similar to the instant case, the defendants in *Okcuoglu* were introducing brokers who, although not explicitly made parties to a customer agreement signed between plaintiffs and a clearing house broker, sought to invoke the compulsory arbitration provision of that agreement. Plaintiffs opposed arbitration on the ground that the defendant introducing broker was not a party to the agreement.

In holding that the defendant introducing brokers *could* invoke the arbitration provisions of the agreement, the court in *Okcuoglu* adopted the following four-step analysis: (1) since the transactions sued upon related to unauthorized or unexecuted trades, the possibility remained that the clearing house could be joined as a necessary party; (2) so long as the *possibility* existed of joining the clearing house, such clearing house had the right to have all disputes as to transactions it handled submitted to arbitration; (3) the course of dealings between the parties indicates that the introducing broker acted both as the customer's and the clearing broker's agent; and (4) therefore, the introducing broker, as the clearing broker's agent, could enforce the latter's contingent right to compel arbitration. *Id.* at 750–752.

The above result, stressed the court, did not alter the customer's clear understanding that any dispute involving the clearing broker—either directly or indirectly—would be subject to arbitration. *Id.* at 752. The problem in applying *Okcuoglu,* therefore, is the extent to which the case is distinguishable due to the directness or indirectness of a particular clearing broker's involvement in the transactions sued upon. In short, it follows from *Okcuoglu* that, if there were *no* possibility of joining the clearing house broker to the introducing broker-customer dispute, the introducing broker accordingly could *not* invoke the customer-clearing house contract.

This is such a case. On the state of the pleadings before us, where the case was slated to go to trial in less than two months, no claim has been asserted by either party which intimates even a *potential* involvement of SSC, the clearing house. Thus, because SSC's involvement in the dispute before us cannot be characterized as even indirect, we conclude that

SSC was not subject to the dispute and hence no contingent right existed for SSC (through its "agents" defendants-appellees) to invoke the arbitration agreement. Accordingly, because we find the agency theory of *Okcuoglu* to be inapposite to the facts of this case, we turn to defendants-appellees next asserted ground for finding a meeting of the minds on the issue of arbitration, i.e., *Cauble, supra* and the third party beneficiary theory.

In *Cauble*, the court held that an introducing commodities broker was the third party beneficiary of, and thus able to independently enforce, the liquidation (not arbitration) provisions of a customer-clearing house agreement. As the *Cauble* court noted, the Restatement of Contracts provides that a party can be considered a third-party beneficiary where " 'recognition of a right to performance is appropriate to effectuate the intention of the parties' " and where " 'the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.' " 594 F.Supp. at 991, *citing* Restatement (Second) of Contracts § 302.

The crux in third-party beneficiary analysis, then, is the intent of the parties. In *Cauble*, the court noted that the course of dealings between the parties indicated that performance of the client's contractual obligations under the agreement with the clearing broker was to be monitored and controlled by the introducing broker. *Id.* at 991. This fact of supervisory powers exercised by the introducing broker over the customer's account, combined with the "central position" of the introducing broker in the customer-clearing house relation, led the *Cauble* court to conclude that the introducing broker "should be" recognized as a third party beneficiary of the customer-clearing broker agreement. *Id.* at 992.

Despite *Cauble*, we decline, on the facts before us, to find an *intent* on the part of both plaintiffs and the clearing broker to allow defendants, the introducing brokers, to invoke the arbitration clause. Granted, it is undisputed that the agreement between plaintiffs and SSC was signed in connection with the opening of plaintiffs' accounts with the defendants introducing brokers. Moreover, we are willing to assume that, as in *Cauble*, the defendants below exercised supervisory powers and stood in a "central position" between plaintiffs and the clearing house. But the difference between this case and *Cauble* is that, unlike the *liquidation* provisions at issue there, it does not follow from the introducing broker's *de facto* control over a client's account that the client originally or subsequently intended that the introducing broker be able to invoke SSC's power to compel *arbitration*. In short, while the power to liquidate can be characterized as an "obvious" (and hence, intended) incident of an introducing broker's administrative or supervisory powers over a customer's account, *id.*, we do not regard it as obvious that a customer intended or agreed to have all disputes with an introducing broker arbitrated merely because the introducing broker exercises certain supervisory powers over an account or its margin requirements. Thus, because it is not clear on the record before us that plaintiffs intended defendants, the introducing brokers, to invoke the arbitration clause of the agreement between plaintiffs and SSC, we decline to adopt the third-party beneficiary theory of *Cauble*.

Finally, our conclusion—that defendants-appellees, the introducing brokers, are not intended beneficiaries of the arbitration clause—is bolstered by the language of the agreement itself. The agreement, drafted in letter form, refers throughout to three parties: (1) "you," i.e., SSC, the clearing house broker; (2) "the undersigned," i.e., plaintiffs-appellants, the customers; and (3) "the introducing firm," i.e., defendants-appellees, the introducing brokers. The agreement goes on to selectively include, and exclude, the introducing firm from certain provisions. Specifically, the introducing broker is not included in the clause providing for compulsory arbitration: "Any controversy *between you and the undersigned* arising out of or relating to this contract, or the breach thereof, shall be

settled by arbitration...." (Emphasis supplied).

On appeal, the appellants urge us to take note of the probable sophistication of the drafters of the agreement, and argue that therefore the omission of defendants from the arbitration clause must be regarded as purposeful. We agree. Thus, because the drafters specifically included the introducing firm in certain provisions, and because the introducing firm was *not* included in the arbitration clause, we believe the reasonable inference to be that the parties did *not* intend defendants-appellees, the introducing firm, to be a beneficiary of the arbitration clause. Rather, the plain meaning of a well-drafted contract suggests that defendants-appellees could not compel arbitration, and the facts as pleaded by defendants do not persuade us otherwise. Thus, because we cannot find convincing support for a conclusion that defendants-appellees are parties to the arbitration clause, and because we therefore cannot find a contract between plaintiffs and defendants on the issue of compulsory arbitration, we conclude that the granting below of defendants' motion to compel arbitration was error. The order of the district court is therefore vacated and the case remanded for trial to proceed on the merits.