# United States Court of Appeals
## For the First Circuit

No. 16-2456

LUIS ADRIÁN CORTÉS-RAMOS,

Plaintiff, Appellant,

v.

ENRIQUE MARTIN-MORALES, a/k/a Ricky Martin,
JOHN DOE, RICHARD DOE,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Daniel R. Domínguez, U.S. District Judge]

Before

Torruella, Lipez, and Barron,
Circuit Judges.

Juan R. Rodríguez, with whom Rodríguez Lopez Law Offices, P.S.C. was on brief, for appellant.

David C. Rose, with whom Pryor Cashman LLP, Jorge I. Peirats, and Pietrantoni Méndez & Alvarez LLC, were on brief, for appellees.

June 27, 2018

**BARRON**, <u>Circuit Judge</u>. This case concerns Luis Adrián Cortés-Ramos' appeal from a District Court order that dismissed his claims that the singer Enrique Martin-Morales violated various articles of the Puerto Rico Civil Code and federal copyright and trademark laws. The suit arises in connection with a songwriting contest held in Puerto Rico in 2014.

For purposes of this appeal, Cortés-Ramos does not dispute that, as a contestant, he agreed to the terms of the contest's rules and that they included an arbitration provision that compelled the submission to arbitration of those of his claims that "aris[e] in connection with, touch[e] upon or relat[e] to" those rules. He contends, though, that the District Court erred in granting Martin's motion to dismiss his claims based on that arbitration provision.

We agree with Cortés-Ramos. We therefore reverse the order dismissing his claims pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]

## I.

In 2013, Sony Music Entertainment, Sony Music Brasil, Sony Pictures Television, Inc., and Sony Electronics, Inc. (collectively "Sony") co-sponsored the "SuperSong" contest. The

---

[1] Martin contended below that he does not have the necessary "minimum contacts" with Puerto Rico to subject him to personal jurisdiction in that District. We need not resolve that issue.

- 2 -

contest invited entrants to compose, record, and submit an original musical composition and accompanying music video. According to the contest's rules, the winning composition would potentially be included on the 2014 Fédération Internationale de Football Association ("FIFA") World Cup Official Album.

On January 2nd, 2014, Cortés-Ramos entered the contest by uploading a song and accompanying music video to the contest's website prior to the submission deadline of January 6, 2014. On January 8, 2014, Cortés-Ramos was notified by email that he was selected as one of twenty finalists, and, on January 15, 2014, Cortés-Ramos received an email from a representative of one of the contest co-sponsors that requested that, in connection with his entry in the contest, he sign several documents and return the documents to Sony. Cortés-Ramos signed the documents before a notary public and returned them.

On February 10, 2014, a different entrant was announced as the winner of the contest. On or about April 22, Martin released a song and music video entitled "Vida."

Cortés-Ramos alleges in his suit, which he filed on February 8, 2016 in the United States District Court for the District of Puerto Rico, that Martin's "Vida" music video is similar to the music video that he had submitted as an entrant in the contest. On the basis of that allegation, he claimed that he was entitled to damages pursuant to federal and Puerto Rico law.

The District Court dismissed all of Cortés-Ramos' claims, however, based on a provision of the contest's rules. Those rules state that "[b]y entering this Contest, entrant . . . expressly agrees to all terms and conditions set forth in these Official Rules." The rules then describe, among other things, requirements for eligibility, winner selection, a description of the prize, and a list of contest "Co-Sponsors." And, most relevant to this appeal, the rules include an arbitration provision, which states:

> These Official Rules shall be governed by and construed in accordance with the laws of the State of New York, United States of America, without regard to choice of law principles. All actions or proceedings <u>arising in connection with, touching upon or relating to</u> these Official Rules, the breach thereof and/or the scope of the provisions of this Section 6 shall be submitted to [the arbitration provider].

(Emphasis added).

That provision goes on to describe the arbitration process in some detail, and, in particular, it makes clear that for disputes otherwise within the provision's scope, a cause of action may only be brought in specified circumstances.[2]

---

[2] That exception to the requirement to arbitrate provides:

> <u>Neither party</u> shall be entitled or permitted to commence or maintain any action in a court of law with respect to any matter in dispute until such matter shall have been submitted to arbitration as herein provided and then only

- 4 -

The District Court ruled that Cortés-Ramos' claims must be dismissed pursuant to the arbitration provision, as that provision encompasses "[a]ll actions or proceedings arising in connection with, touching upon or relating to these Official Rules, the breach thereof and/or the scope of the provisions of this Section 6 shall be submitted to [the arbitration provider.]"  The District Court explained that "a non-signatory may . . . acquire rights under an arbitration agreement under ordinary state-law principles of . . . contract[,]" Restoration Pres. Masonry Inc. v. Grove Eur. Ltd., 325 F.3d 54, 63 n.2 (1st Cir. 2003)[,]" and that Martin, who "was an active part of the SuperSong Contest," could do so "[e]ven if [Martin] was not a co-sponsor," because he

> was a third-party beneficiary and the face of the SuperSong Contest.  See Motorsport Eng'G v. Maserati S.P.A., 316 F.3d 26, 29 (1st Cir. 2002) ("A third-party beneficiary is one who is given rights under a contract to which that person is not a party.").  Defendant was even included in many parts of said contract. See Docket No. 8, Exhibit B. ("I understand and agree that materials relating to the Contest, Television Special, FIFA World Cup and Ricky

> for the enforcement of the arbitrator's award; provided, however, that prior to the appointment of the arbitrator or for remedies beyond the jurisdiction of an arbitrator, at any time, either party may seek pendente lite relief in a court of competent jurisdiction in New York, New York or, if sought by Co-Sponsors, such other court that may have jurisdiction over the entrant, without thereby waiving its right to arbitration of the dispute or controversy under this Section. (Emphases added).

Martin, and/or portions thereof, including the SuperSong Materials, will be distributed to the public, in any medium.").

Cortés-Ramos now brings this appeal in which he challenges the District Court's ruling that the arbitration agreement requires the dismissal of his claims against Martin. Our review is de novo. See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 7 (1st Cir. 2011).

## II.

We note at the outset that Martin argues that Cortés-Ramos effectively conceded the premise on which his appeal rests in his complaint because it states that Martin was a "sponsor or co-sponsor of the . . . Contest" and there is no question that if Martin is a co-sponsor he may enforce the arbitration provision. But, the language in Cortés-Ramos' complaint that states that Martin and Sony "claimed that they were sponsors or co-sponsors" of the contest does not constitute a concession by Cortés-Ramos that Martin is a sponsor or co-sponsor of the contest. That statement merely describes an assertion that Martin and Sony made about Martin's status.[3]

---

[3] Martin also claims that the argument that he cannot invoke the arbitration agreement was waived by Cortés-Ramos, as it was made for the first time in Cortés-Ramos' reply in opposition to Martin's motion to dismiss. We do not agree. Cortés-Ramos' suit in federal court itself impliedly asserts that there was no barrier to his decision to attempt to resolve this dispute in a court, and when Martin affirmatively invoked the arbitration agreement as a

Martin does not make any other argument that we may affirm the ruling below on the ground -- not reached by the District Court -- that he is a co-sponsor or sponsor of the contest and thus that he may enforce the agreement to arbitrate as a party to it. As a result, we now turn to the basis for Cortés-Ramos' challenge to the District Court's order of dismissal, which we find persuasive.

Cortés-Ramos contends that the District Court erred in ruling that Martin, even if not a party to the agreement, could invoke its requirement that suits "arising from, touching on, or relating to" the contest's rules be submitted to arbitration. We have explained that the intent to provide a benefit to third parties in an arbitration agreement "constitutes an exception to the general rule that a contract does not grant enforceable rights to nonsignatories" and thus that "a person aspiring to such status must show with special clarity that the contracting parties intended to confer a benefit on him." McCarthy v. Azure, 22 F.3d 351, 362 (1st Cir. 1994).

In requiring a showing of "special clarity," McCarthy relied on Mowbray v. Moseley, Hallgarten, Estabrook & Weeden, Inc., 795 F.2d 1111 (1st Cir. 1986). In Mowbray, we acknowledged that parties to an arbitration agreement may intend for a third party

defense, Cortés-Ramos responded in his reply briefs, arguing that Martin could not enforce the agreement.

to be a beneficiary of it and thus to be entitled to enforce it. Id. at 1117. We found, however, that the agreement at issue did not reveal that the parties to it intended for a third party to benefit from it with the requisite clarity, and we did so for reasons that also apply here.

The arbitration provision at issue in Mowbray was contained in a customer agreement that had been signed by the plaintiffs, who were stock purchasers, and a clearing house broker. Id. at 1112. The defendants in the suit were an introducing stockbroker and his brokerage firm, and the defendants were not a party to the customer agreement. Id. Nevertheless, the defendants sought to invoke the arbitration provision in the customer agreement in order to dismiss the plaintiffs' claims. Id.

In ruling that the defendants could not invoke the arbitration provision, we explained that it expressly referred only to both the plaintiffs -- through the words "the undersigned" -- and the non-party clearing house broker, and thus not to any of the defendants. Id. at 1117. Nevertheless, we noted that it was "undisputed" that the parties to the agreement signed it "in connection with the opening of plaintiffs' accounts with the defendants." Id. We also noted that the agreement "tangentially refers to defendants in their 'introducing firm' role." Id. at 1115. In the end, though, we held that it did not follow from these references to the defendants that the plaintiff

"intended that the introducing broker be able to invoke [the clearing house broker's] power to compel arbitration[.]" Id.

Critical to our conclusion was "the language of the agreement itself." Id. We noted that the agreement:

> refers throughout to three parties: (1) "you," i.e., SSC, the clearing house broker; (2) "the undersigned," i.e., plaintiffs-appellants, the customers; and (3) "the introducing firm," i.e., defendants-appellees, the introducing brokers. The agreement goes on to selectively include, and exclude, the introducing firm from certain provisions. Specifically, the introducing broker is not included in the clause providing for compulsory arbitration: "Any controversy between you and the undersigned arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration."

Id. at 1117-18. We then explained that "because the drafters specifically included the introducing firm in certain provisions, and because the introducing firm was not included in the arbitration clause, we believe the reasonable inference to be that the parties did not intend defendants-appellees, the introducing firm, to be a beneficiary of the arbitration clause." Id. at 1118.

Unlike in Mowbray, the language of the arbitration provision at issue in this case sets forth the requirement to arbitrate in general terms that are not clearly cabined to encompass only disputes between the parties to the agreement to arbitrate. See id. at 1117-18 (noting that clause providing for arbitration covered "[a]ny controversy between you and the

- 9 -

<u>undersigned</u> arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration") (emphasis in original). But the arbitration provision that we consider here does contain an exception to the requirement to arbitrate that suggests that it simply does not apply to a dispute involving Martin because he is neither a contestant nor a co-sponsor.

In describing the limited types of actions that may be brought in court notwithstanding the underlying dispute's connection to the contest rules, the exception refers to "either party" and to "neither party." See supra note 2. And, the context in which those references appears makes clear that the only "parties" contemplated are the co-sponsors of the contest and the contest entrants. Id. Thus, the natural reading of the provision as a whole is that the exception applies to only those "parties" whose disputes the arbitration provision covers, as it would be strained to conclude the drafters intended to specially carve out an exception for only those particular, expressly-listed parties from a general requirement to arbitrate that the drafters intended to apply to a broader class.

That the arbitration provision appears, at least by implication, to exclude Martin from its reach is significant. One presumes that the drafters knew how to refer to Martin if they wished. After all, Martin is seemingly referenced in a different provision in the contest rules, where they refer to "a Sony Music

- 10 -

international recording artist ('Superstar')." And that reference, because it is not in the arbitration provision itself, suggests, per Mowbray, that Martin was not an intended third-party beneficiary of the parties' agreement to arbitrate.

The same is also true of the references to Martin that appear in a release and affidavit of contest eligibility that were each executed by Cortés-Ramos before a notary and that Cortés-Ramos returned to Sony after he was informed that he was a finalist in the contest. Even if the documents containing them were, as Martin contends, "expressly made a part of and/or supplemented the Contest Rules," those references would suggest that Martin may not invoke the arbitration provision precisely because there are many references to him outside of it.

Mowbray did also consider the argument that the relationship between the plaintiffs and the defendants -- namely, that "the defendants below exercised supervisory powers [over the plaintiffs' accounts] and stood in a 'central position' between plaintiffs and the clearing house," -- was so tight that it would be reasonable to infer that the drafters intended for the arbitration provisions to benefit the defendants. Mowbray, 795 F.2d at 1117. But, Mowbray concluded, based on the language of the agreement as a whole, that the close nature of the relationship of the defendants to the parties to that agreement did not

- 11 -

necessitate finding such an intent on the part of the plaintiffs and the clearing house.  Id.

For similar reasons, Martin's argument that he is entitled to invoke the arbitration provision in this case because he "was intrinsically linked to" the contest fails.  A consideration of the agreement to arbitrate as a whole -- given the exception to the arbitration provision we have described and the references to Martin that appear outside that provision -- does not reveal the requisite intent by the parties to that agreement to so benefit him with the kind of "special clarity" that we require.  McCarthy, 22 F.3d at 362.

**III.**

Accordingly, the order to dismiss Cortés-Ramos' claims is **reversed**.