# United States Court of Appeals
## For the First Circuit

No. 17-1769

ANTONIO BORRÁS-BORRERO; IVELISSE SERRANO-RODRÍGUEZ; CONJUGAL
PARTNERSHIP BORRÁS-SERRANO,

Plaintiffs, Appellants,

v.

CORPORACIÓN DEL FONDO DEL SEGURO DEL ESTADO;
LIZA ESTRADA-FIGUEROA; MIGDALI RAMOS-RIVERA;
FRANCISCO IRLANDA-MÉNDEZ; MARÍA ENID BARRETO-RODRÍGUEZ;
JUAN ESCOBAR-DEL VALLE,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Howard, Chief Judge,
Torruella and Thompson, Circuit Judges.

Rafael E. Rivera-Sánchez for appellants.
Carlos Lugo-Fiol, with whom Isaías Sánchez-Báez, Solicitor
General, was on brief, for appellees Lisa Estrada-Figueroa,
Migdali Ramos-Rivera, Francisco Irlanda-Méndez, María Enid
Barreto-Rodriguez, and Juan M. Escobar-Del Valle.
Peter W. Miller, with whom Javier A. Vega-Villalba, Stuart A.
Weinstein-Bacal, and Weinstein-Bacal, Miller & Vega, P.S.C. were
on brief, for appellee Corporación del Fondo del Seguro del Estado.

May 1, 2020

**HOWARD**, **Chief Judge**. Antonio Borrás-Borrero appeals the district court's dismissal of his complaint[1] alleging that the Corporación del Fondo del Seguro del Estado (the "SIFC"[2]), along with its administrators (the "Individual Defendants"), conspired to deprive Borrás of his First, Fourth, Fifth, and Fourteenth Amendment rights. Specifically, Borrás asserts that several adverse employment actions taken against him by the SIFC — a demotion, suspension with pay, and suspension without pay — were acts of retaliation to punish him for his constitutionally-protected whistleblowing activities.

We address the claims in two sets: first, we summarily affirm the district court's dismissal of the following claims because Borrás has failed to "seriously develop[]" arguments in their favor on appeal: (1) deliberate and intentional infliction of economic and emotional injury; (2) violation of Borrás's Fifth Amendment right against self-incrimination; (3) impermissible disclosure of Borrás's personnel file; and (4) malicious prosecution. Tejada-Batista v. Morales, 424 F.3d 97, 103 (1st

---

[1] In addition to Borrás, his wife, Ivelisse Serrano-Rodríguez, and the partnership between them are also plaintiffs and appellants. Outside of allegations that Serrano was improperly transferred to a different office, the complaint describes conduct directed at Borrás, and we refer to the claims as belonging to Borrás for simplicity.

[2] "Corporación del Fondo del Seguro del Estado" translates to the "State Insurance Fund Corporation."

Cir. 2005) (stressing that "[a]n argument not seriously developed in the opening brief" is lost); see also Rodríguez v. Mun. of San Juan, 659 F.3d 168, 175 (1st Cir. 2011) (holding that arguments "adverted to in a cursory fashion, unaccompanied by developed argument," are waived).

Next, for the reasons discussed below, we also affirm the district court's dismissal of the remaining claims, although we vacate the district court's dismissal of the Puerto Rico law claims with prejudice and remand with instructions to dismiss those claims without prejudice.

## I. Factual History

The SIFC is a public governmental agency created under Puerto Rico law to administer workers' compensation and medical treatment programs for employees injured in the workplace. Borrás has been an SIFC employee since 1984. The Individual Defendants, also employees of the SIFC, include: (1) Liza Estrada-Figueroa, the head Administrator of the SIFC; (2) Migdali Ramos-Rivera, the Associate Director of the SIFC's Labor Relations Office under Estrada's direct supervision; (3) Francisco Irlanda-Méndez, an officer in the Labor Relations Office under Ramos's direct supervision; (4) Juan Escobar-del Valle, a janitor and internal messenger; and (5) María Enid Barreto-Rodríguez, a Regional Director under Estrada's direct supervision, who, at all times

relevant to the complaint, was the regional director for Borrás and Escobar.

Two allegedly retaliatory actions by the SIFC comprise the basis of Borrás's complaint. The first took place in 2010. Early that year, soon after his promotion to supervisor of his office, which produced worker's compensation policies for employers, Borrás reported to the SIFC's audit division that an employee named Nury Curet, whom he supervised, had been absent for two days. According to Borrás, following his report documenting Curet's absence, Curet's husband approached Borrás in his office "full of rage" and attempted to physically assault him. Borrás reported this incident both to the SIFC's internal Labor Relations Office and to law enforcement. However, when the police came to take Borrás's complaint, SIFC administrators told them that the incident would be handled internally.

Shortly after this incident, the Regional Director of Borrás's office allegedly told Borrás that he would be demoted from his position as supervisor because of "his political affiliation with the Popular Democratic Party." According to Borrás, the Regional Director added that the incident with Curet and her husband "had precipitated his demotion." The relationship between Borrás's political affiliation and the incident with Curet remains unclear from the complaint. Thereafter, Borrás was removed from his post as supervisor and reassigned to his previous union-

protected position. In response, Borrás filed a lawsuit against the SIFC — unrelated to this one — alleging that he had been impermissibly demoted because of his political affiliation.[3]

The second allegedly retaliatory act against Borrás took place in 2014. According to Borrás, Defendant Juan Escobar-del Valle had been engaged in a "pattern of hostilities" towards Borrás for several years. In March 2014, these hostilities escalated when Escobar allegedly "tried to assault and batter" Borrás at a shopping mall and again at work the next day. Borrás reported these incidents to the internal Labor Relations Office, as well as to the Regional Director in charge of his office. Borrás alleges that the SIFC failed to investigate these events.

On August 29, 2014, Borrás found himself in yet another physical altercation with Escobar, this time at a union assembly meeting. According to Borrás, Escobar deliberately bumped into him and then used the bump to start a fight, "physically assault[ing]" Borrás and hitting him in the face. Borrás sustained "bruises and injuries to his eyes, especially his left eye that

---

[3] The complaint describes two additional incidents following Borrás's demotion but before 2013. First, Borrás again reported Curet for fraudulent expense practices and Borrás's immediate supervisor failed to investigate Borrás's complaint. Second, Borrás claims that Defendant María Enid Barreto-Rodríguez, who was coordinating political donations for the office, failed to deliver $1,100 in donations made by Borrás that were intended for the Popular Democratic Party. It is not clear what role, if any, Borrás alleges these incidents played in either his earlier demotion or his years-later suspensions.

had been operated [on] for glaucoma." This time, Borrás reported the incident to the police.

Borrás alleges that after this incident, Escobar contacted Defendant Maria Enid Barreto-Rodríguez (then the Regional Director of the SIFC office in which Borrás and Escobar worked) to inform her of the fight. Borrás further alleges that after receiving this information, Barreto turned to Defendant Migdali Ramos-Rivera (then the Chief of the Labor Relations Office), asking her to fabricate disciplinary charges against Borrás "as if [Borrás] had been the assailant." Finally, Borrás alleges that Ramos assigned the task of creating a falsified disciplinary action to Defendant Francisco Irlanda-Mendez (then an employee at the Labor Relations Office for the SIFC), who did as he was asked.

Four days after the fight at the union assembly meeting, Irlanda summoned Borrás for an interview regarding the incident. Borrás refused to speak to Irlanda about the physical altercation, citing his Fifth Amendment right against self-incrimination and explaining that because there was an ongoing criminal investigation by the San Juan Municipal police, he did not know if he would be charged. The next day, September 3, 2014, Borrás received a letter indicating that, as a result of the fabricated assault allegations against him, he had been suspended from work, with pay.

On September 11, 2014, criminal charges were filed against Escobar in Puerto Rico court for the alleged assault. At one point, the judge instructed Ramos, who was present in the courtroom for a discovery conference, to produce a copy of Borrás's personnel file for in camera inspection. Ramos complied, giving the file directly to Escobar's attorney, despite Borrás's protests that the production of his personnel file constituted a violation of both his privacy rights and SIFC policy. The court ultimately found Escobar not guilty.

Borrás also alleges that while all of this was going on, the SIFC "unlawfully transferr[ed]" his wife, Plaintiff Ivelisse Serrano-Rodríguez, to a different regional office, allegedly in retaliation for her testimony during the trial. Serrano immediately filed an internal complaint challenging her transfer, and she was reinstated to her original post.

On September 22, 2014, the SIFC held a Loudermill hearing for Borrás. The examiner at the hearing ultimately recommended that Borrás be suspended without pay for sixty days. Shortly thereafter, Boráas received a letter signed by Estrada notifying him of his suspension without pay, which adopted by reference the recommendation made by the hearing examiner.

## II. Procedural History

In January 2016, Borrás filed the present complaint in the United States District Court for the District of Puerto Rico,

alleging that the SIFC and its officers had conspired to deprive him of his constitutional rights. Specifically, Borrás asserted that his internal and external reporting of the various incidents were constitutionally-protected "whistleblowing activities," and that the SIFC and its administrators had punished him for these activities by demoting and suspending him. The complaint includes claims brought under 42 U.S.C. § 1983 ("Section 1983") that the SIFC and its administrators' behavior violated the U.S. Constitution, as well as claims that the SIFC violated Puerto Rico law.

The SIFC moved to dismiss Borrás's complaint based on Eleventh Amendment immunity. A few weeks later, the Individual Defendants followed suit, filing a "Motion for Joinder and Motion to Dismiss under Additional Grounds." Borrás timely filed his opposition to each motion. In his response to the Individual Defendants' motion, Borrás referenced the need to amend his complaint. Nevertheless, despite the ability to amend the complaint "once as a matter of course" under Fed. R. Civ. P. 15(a)(1), at no point did Borrás actually amend his complaint or request leave to file an amended complaint.

The district court entered a partial judgment granting the SIFC's motion to dismiss based on Eleventh Amendment immunity on March 22, 2017, and a judgment dismissing the entire case with prejudice on June 14, 2017. This appeal followed.

**III. Discussion**

In this appeal, we consider five key issues. First, we discuss the possibility that the SIFC may be insulated from suit. Second, we consider whether the district court properly dismissed Borrás's Section 1983 claims. Third, we consider whether the district court properly declined to exercise supplemental jurisdiction over Borrás's claims under Puerto Rico law. Fourth, we consider the merits of Borrás's claim that his Loudermill hearing did not comport with the requirements of due process because he was not afforded a hearing in an impartial forum before an impartial adjudicator. Finally, we consider whether the district court violated Borrás's due process rights by denying him the opportunity to amend his complaint before dismissing it with prejudice.

**A. Standard of Review**

We review the district court's dismissal of Borrás's complaint for failure to state a claim de novo. Cortés-Ramos v. Martin-Morales, 894 F.3d 55, 58 (1st Cir. 2018). "The make-or-break standard . . . is that the combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief." Sepulveda-Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 29 (1st Cir. 2010) (citing Ashcroft v. Iqbal, 556 U.S. 662, 680-81 (2009)).

The familiar Twombly standard clarifies that under Fed. R. Civ. P. 12(b)(6), a complaint must allege a "plausible entitlement to relief." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 559 (2007). In evaluating whether a plaintiff has met this burden, we "accept[] the complaint's well-pleaded facts as true and indulg[e] all reasonable inferences in the plaintiff's favor." Cook v. Gates, 528 F.3d 42, 48 (1st Cir. 2008). Even so, the tenet that a court must accept as true all of the allegations contained in a complaint is "inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). In other words, "[i]f the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." Artuso v. Vertex Pharm., Inc., 637 F.3d 1, 5 (1st Cir. 2011) (quoting Secs. and Exch. Comm'n v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010)).

**B. The SIFC's Amenability to Suit**

Before we reach the merits of the Section 1983 claim, we must first discuss two preliminary arguments that could potentially insulate the SIFC from suit altogether.

First, the SIFC asserts that it can benefit from the Commonwealth's Eleventh Amendment immunity because it is an "arm

- 10 -

of the state."  Fresenius Med. Care Cardiovascular Res., Inc. v. P.R. and Caribbean Cardiovascular Ctr. Corp., 322 F.3d 56, 61 (1st Cir. 2003) (finding that whether a public entity is entitled to Eleventh Amendment immunity is an inquiry into whether it is an arm of the state).  Indeed, "Puerto Rico is treated as a state for Eleventh Amendment purposes," id., and the district court dismissed the claims against the SIFC based on its entitlement to protection under the Commonwealth's immunity.

Nevertheless, determining whether the SIFC is entitled to Eleventh Amendment immunity is not straightforward: in separate cases, the District of Puerto Rico has decided the issue in both directions.  Compare Joubert-Vazquez v. Alvarez-Rubio, 820 F. Supp. 2d 289, 298-300 (D.P.R. 2011) (finding that the SIFC was not entitled to Eleventh Amendment immunity), with Borrás-Borrero v. State Ins. Fund Corp., CIVIL 16-1114CCC, 2017 WL 1088284, at *1 (D.P.R. March 22, 2017) (finding that the SIFC was entitled to Eleventh Amendment immunity) (citing Order, Bisbal-Bultron v. State Ins. Fund Corp., CIVIL 10-01555CCC, ECF No. 80, at *2-3 (D.P.R. May 6, 2014)).  But "it is well-established under First Circuit precedent that federal courts may resolve a case on the merits in favor of a state without first resolving any Eleventh Amendment issues the state raises." Brait Builders Corp. v. Mass., Div. of Capital Asset Mgmt., 644 F.3d 5, 11 (1st Cir. 2011) (citing Parella v. Ret. Bd. of R.I. Emps.' Ret. Sys., 173 F.3d 46, 53-57

- 11 -

(1st Cir. 1999)).  As a result, we may "defer thorny Eleventh Amendment questions in cases in which it is perfectly clear that the state entity will prevail on the merits."  Dávila v. Corporación de P.R. para la Difusión Pública, 498 F.3d 9, 14 (1st Cir. 2007) (citing Parella, 173 F.3d at 53-57).

Because we comfortably conclude that Borrás's Section 1983 claims lack substantive merit, we decline to address whether the SIFC may assert the Commonwealth's Eleventh Amendment immunity.

Second, the Puerto Rico Oversight, Management, and Economic Stabilization Act ("PROMESA"), enacted to help the Commonwealth navigate its public debt crisis, included an automatic stay of ongoing litigation that could result in the Commonwealth incurring liability. See 48 U.S.C. § 2194(b).  While the SIFC references the stay and argues that we should interpret PROMESA to strengthen its Eleventh Amendment immunity argument, the SIFC does not argue that this action should be stayed under PROMESA.  Both Borrás and the Individual Defendants similarly do not argue that the PROMESA stay prevents us from addressing the claims against the SIFC on the merits.

While we are not bound by the parties' collective failure to discuss applicable law, we are generally reluctant to venture beyond the ambit of the parties' arguments to decide an issue without full briefing. See Whyte v. Conn. Mut. Life Ins. Co., 818

F.2d 1005, 1011 n.20 (1st Cir. 1987) (declining to address an issue not raised by the parties unless "at a minimum . . . not raising the issue would result in a gross miscarriage of justice"). That reluctance is particularly warranted where, as here, the underlying legal issue is not clear-cut: it is not obvious that the Commonwealth should be considered an "obligor[] or guarantor" of liability incurred by the SIFC, a prerequisite for the stay to apply. 48 U.S.C. § 2194(a)(1)(A). Furthermore, though we do not decide the issue, we are skeptical that the PROMESA stay's prohibition of "the commencement or continuation, including the issuance or employment of process, of a judicial . . . action," 48 U.S.C. § 2194(b)(1), requires the automatic implementation of the stay in lieu of dismissal on the merits. Cf. In re Pecan Groves of Ariz., 951 F.2d 242, 245 (9th Cir. 1991) (finding that creditors were unable to attack purported violations of an automatic bankruptcy stay under 11 U.S.C. § 362 because the stay was intended to benefit the debtor).

Because the parties do not argue that the PROMESA stay applies to this litigation, and because the implementation of the stay is not clear-cut, we bypass this argument and proceed to the merits of Borrás's claims.

## C. Borrás's Section 1983 Claims

On the merits, we begin with whether the district court properly dismissed Borrás's Section 1983 claims. Despite the

- 13 -

litany of constitutional claims alleged in his complaint, Borrás advances a single argument on appeal: that the SIFC and the Individual Defendants violated his freedom of expression by retaliating against him for speaking out against his fellow employees.

Borrás is correct that government officials may not retaliate against an individual for blowing the whistle and reporting misconduct by other employees. See Mercado-Berrios v. Cancel-Alegría, 611 F.3d 18, 25 (1st Cir. 2010) (citing Hartman v. Moore, 547 U.S. 250, 256 (2006)). However, where a state employee plaintiff (here, Borrás) asserts that a state-employer defendant (here, the SIFC) violated his right to free expression by taking an adverse employment action against him, we qualify the general prohibition against retaliation in recognition of the government's interest in running an effective workplace. See id. at 26. We therefore apply a three-part test in these circumstances, considering:

> (1) whether the speech involves a matter of public concern; (2) whether, when balanced against each other, the First Amendment interests of the plaintiff and the public outweigh the government's interest in functioning efficiently; and (3) whether the protected speech was a substantial or motivating factor in the adverse action against the plaintiff.

Rosado-Quiñones v. Toledo, 528 F.3d 1, 5 (1st Cir. 2008) (quoting Jordan v. Carter 428 F.3d 67, 72 (1st Cir. 2005)).

- 14 -

The district court held that Borrás failed to satisfy the first and third prongs of this test, because (1) his speech allegedly giving rise to retaliation was not on a matter of public concern, and because (2) he failed to plead sufficient facts establishing that his expression was a substantial or motivating factor in the adverse decisions taken against him.

We agree with the district court on both fronts. Borrás all but openly concedes that his speech is not on a matter of public concern; the entirety of his argument on appeal is that his speech need not be on a matter of public concern because Puerto Rico law does not require government employee speech to be on a matter of public concern to be protected. Therefore, according to Borrás, both Supreme Court and First Circuit law restricting the scope of First Amendment protections for government employee speech do not apply here.

This proposition is patently untrue as a matter of law. "It is established beyond peradventure that a state actor's failure to observe a duty imposed by state law, standing alone, is not a sufficient foundation on which to erect a section 1983 claim." Martinez v. Colon, 54 F.3d 980, 989 (1st Cir. 1995). To the contrary, in order to state a claim under Section 1983, a plaintiff must "allege the violation of a right secured by the Constitution and laws of the United States[.]" West v. Atkins, 487 U.S. 42, 48 (1988). The Supreme Court has consistently clarified that Section

1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 510 U.S. 266, 271 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)). Whether or not Borrás has a legitimate claim under state law that the SIFC retaliated against his free expression, his Section 1983 claims cannot succeed to the extent that they rely on protections that are present in Puerto Rico law but not in the U.S. Constitution or any federal statutes, as they therefore do not vindicate "federal rights," Atkins, 487 U.S. at 49, secured by the United States' "Constitution and laws," 42 U.S.C. § 1983.

We follow controlling First Amendment precedent and find that Borrás's Section 1983 claims were properly dismissed. We have explicitly found that a complaint regarding personal animosity between coworkers, as here, represents "a classic example of speech concerning internal working conditions affecting only the speaker and co-workers," not speech which concerns the public. Rosado-Quiñones, 528 F.3d at 5; see also Connick v. Myers, 461 U.S. 138, 145-46 (1983).

The facts before us are strikingly similar to the facts in Rosado-Quiñones, in which the plaintiff was allegedly demoted because he filed a lawsuit against his employer claiming "labor harassment." 528 F.3d at 5. There, we found that the plaintiff's claims, which were applicable to him alone, did not "implicate the

ability" of the public employer to "carry out [its] responsibility to the public," and therefore did not merit First Amendment protection. Id. Applying this standard to the facts presented, we cannot discern any articulable relationship between Borrás's conflict with Escobar and the ability of the SIFC to fulfill its public duties. Even drawing all reasonable inferences in Borrás's favor, our most charitable reading of the complaint still reveals that what Borrás attempts to frame as "whistleblowing" is better characterized as a scattered collection of misgivings about his fellow employees who, more often than not, were acting in their personal capacities.

None of Borrás's speech acts concern the SIFC in its operational capacity — and even if they did, the Supreme Court has denied First Amendment protection to "mere extensions" of personal disputes which, if released to the public, "would convey no information at all other than the fact that a single employee is upset with the status quo." See Connick, 461 U.S. at 148. Because Borrás alleges nothing in the complaint to suggest that this incident could be related to the SIFC's "official malfeasance, abuse of office, and neglect of duties" — the quintessential subjects of public concern when it comes to public employee speech

— his claim cannot survive. <u>Rosado-Quiñones</u>, 528 F.3d at 5 (quoting <u>Curran</u> v. <u>Cousins</u>, 509 F.3d 36, 46 (1st Cir. 2007)).[4]

Furthermore, even if his speech were on a matter of public concern, Borrás still fails to allege a single non-conclusory fact linking his suspension to his "whistleblowing" acts. The complaint is rife with conclusory allegations that the defendants conspired to fabricate a disciplinary claim against Borrás concerning his physical conflict with Escobar, but remains conspicuously silent on several key questions, such as (a) whether the defendants even knew of the speech that allegedly engendered retaliation to begin with; (b) whether the defendants, if they did know of the speech that allegedly engendered retaliation, felt negatively (or had reason to feel negatively) about the speech; and (c) whether the defendants at any time considered Borrás's speech when suspending him from work.

We do not suggest that Borrás must painstakingly allege facts that would address each of these issues to state a claim for relief. But, taken as a whole, these open questions reflect a conspicuous dearth of factual allegations in the complaint that

---

[4] We do not consider whether Borrás's speech in relation to his 2010 demotion was on a matter of public concern because the demotion is the subject of a separate action. <u>See</u> Order, <u>Bisbal-Bultron</u>, CIVIL 10-01555CCC, ECF No. 80. To the extent included in this action, claims related to the demotion are barred by the statute of limitations. <u>See</u> <u>Muñiz-Cabrero</u> v. <u>Ruiz</u>, 23 F.3d 607, 610 (1st Cir. 1994) (explaining that the statute of limitations for a Section 1983 claim in Puerto Rico is one year).

might tend to show that Borrás's suspension had anything to do with the reporting of his coworkers. Even if the facts--construed in the light most favorable to Borrás--might lead us to conclude that he was treated unfairly by his public employer, a First Amendment retaliation claim must allege specific facts that connect an adverse employment action to the speech or whistleblowing activity. Stripped of its conclusory allegations, the complaint cannot survive under Fed. R. Civ. P. 12(b)(6).

**D. Borrás's Puerto Rico Law Claims**

Having determined that Borrás's Section 1983 claims were properly dismissed, we next turn to whether the district court properly dismissed Borrás's claims brought under Puerto Rico law. District courts may exercise supplemental jurisdiction over state law claims that are "so related to claims in the [federal] action . . . that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). However, it is settled law that district courts may decline to exercise supplemental jurisdiction over pendent state law claims when the anchor federal claims for those state law claims are dismissed. See So. Commons Condo. Ass'n v. Charlie Arment Trucking, Inc., 775 F.3d 82, 92 (1st Cir. 2014). "[W]hen the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without

- 19 -

prejudice." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988); see also United States ex rel. Kelly v. Novartis Pharm. Corp., 827 F.3d 5, 15 (1st Cir. 2016) (recognizing that when federal claims are dismissed "at such an early stage" supplemental state law claims should also be dismissed). Therefore, because the district court properly dismissed Borrás's Section 1983 claims, it acted within its power to decline to exercise supplemental jurisdiction and, accordingly, dismiss his pendent Puerto Rico claims as well.

But, it appears that, in dismissing Borrás's Puerto Rico law claims without discussion, the district court dismissed them with prejudice, stating that "the Complaint . . . is DISMISSED, with prejudice, in its entirety." When declining to exercise supplemental jurisdiction over claims, it "does not wash" to dismiss them with prejudice instead of without prejudice. Novartis, 827 F.3d at 16. We therefore vacate the district court's dismissal of Borrás's Puerto Rico law claims with prejudice and remand with instructions to dismiss those claims without prejudice.

**E. Loudermill Hearing**

Next, Borrás argues that "[t]he district court erred when finding that [his] Loudermill informal hearing complied with due process," because "it goes without saying that Loudermill hearings must take place in an impartial forum, with an impartial

adjudicator, free of bias." This argument contravenes established law. In Cleveland Bd. of Educ. v. Loudermill, the Supreme Court admonished that termination decisions typically require the employee to be granted "some kind of a hearing" to avoid running into due process concerns. 470 U.S. 532, 542 (1985).

Critically, however, "[t]he standard the defendant must meet [for a Loudermill hearing] . . . is not high: the U.S. constitution requires only 'some pretermination opportunity to respond.'" Chmielinski v. Massachusetts, 513 F.3d 309, 316 (1st Cir. 2008) (quoting Loudermill, 470 U.S. at 542). We have consistently held that these hearings need not be elaborate so long as the employee receives "(1) 'oral or written notice of the charges against him,' (2) 'an explanation of the employer's evidence,' and (3) 'an opportunity to present his side of the story.'" Id. (quoting Loudermill, 470 U.S. at 545-46). And, we have explicitly said that "there is no requirement that the hearing officer be impartial; indeed, the terminating employer may preside." Id. at 318.

Borrás does not assert that any alleged bias deprived him of either notice or the opportunity to put his version of the facts before a decision-maker; this is all that Loudermill requires. Therefore, his argument that his Loudermill hearing did not comport with due process fails.

## F. Ability to Amend Complaint

Finally, we turn to Borrás's assertion that the district court's failure to allow him to amend his complaint before dismissing it with prejudice violated his right to due process. Fisher v. Kadant, Inc. is directly on point. 589 F.3d 505 (1st Cir. 2009). In Fisher, we considered "what effect, if any . . . a passing reference to a possible future motion to amend, contained in an opposition to a motion to dismiss, [has] on the district court's authority to allow amendment of a dismissed complaint after the entry of judgment." Id. at 507. We concluded that "such a passing request is without effect in these circumstances," and that the Fisher plaintiffs' failure to avail themselves of the opportunity to amend their complaint as of right before the issuance of judgment against them rendered them without recourse after the entry of judgment. Id.

Here, like the plaintiffs in Fisher, Borrás adverted to the need to amend his complaint in his opposition to the defendants' motion to dismiss. Nevertheless, at no point did Borrás either take advantage of Fed. R. Civ. P. 15(a)(1), which allows a pleading to be amended "once as a matter of course," or request leave to amend under Fed. R. Civ. P. 15(a)(2). See Fed. R. Civ. P. 15(a)(1)-(2) (allowing parties to amend pleadings "once as a matter of course" under certain limitations and, outside those limitations, with leave of the court or the other party's written

consent).  Only after the issuance of a judgment against him did Borrás argue, on appeal, that he should have been permitted to amend his complaint.  Because Borrás chose not to file an amended complaint prior to the issuance of judgment against him, there was no due process violation.

**IV. Conclusion**

For the foregoing reasons, we **affirm** the district court's dismissal of the federal law claims with prejudice, **vacate** the dismissal of Borrás's Puerto Rico law claims with prejudice, and **remand** with instructions to dismiss the Puerto Rico law claims without prejudice.